[Decided September 12, 1893; rehearing denied October 23, 1893.]

## BARKLEY *v.* OREGON CITY.

[S. C. 33 Pac. Rep. 978.]

24   515
a26   301
26   414
33*   978
38*   127
38*   408
24   515
39   604

1. MUNICIPAL CORPORATIONS — STREET IMPROVEMENTS — NOTICE — MATERIAL. — Abutting property owners cannot complain of a change in the material used in a street improvement from that named in the original notice of intention to improve, where the material adopted is cheaper and more serviceable than the original.

2. MUNICIPAL CORPORATIONS — SIGNATURES TO NOTICE. — A provision in the charter of a city allowing a street improvement to be made when the owners of two thirds of the adjoining property petition for it, requires the petition to be signed only by the owners of two thirds of the property, and not by two thirds of the whole number of owners.

3. ASSESSMENTS — CONSTRUCTIVE NOTICE. — Where an assessment has been made in accordance with the provisions of law, the fact that the property owners thereby affected had no actual knowledge of what was done, is immaterial, — they are chargeable with constructive notice.

4. NOTICE OF MEETING TO EQUALIZE ASSESSMENTS — PRESUMPTION. — In a suit to restrain the collection of street assessments, where the record shows that the council fixed a time for the meeting to equalize the assessments, and the complaint does allege that the notice was not given, it will be presumed that the required notice of the meeting was given.

Clackamas County: LOYAL B. STEARNS, Judge.

This is a suit by Ida M. Barkley and others to restrain the collection of an assessment for grading and improving Seventh Street in Oregon City. The plaintiffs are owners of lots in said city upon which the assessment is a lien, and they ask for a perpetual injunction against its collection upon the ground that the proceedings preliminary to the levy thereof have not been in accordance with the charter of the city, which prescribes the several steps to be taken in such cases. The material facts are that on the fourth of March, 1891, a petition praying for the establishment of a grade and the improvement of said street was presented to the city council, which was on the eighteenth of said month granted, and the recorder ordered to give the proper notice of the intention of the

council to make said improvement. The notice so ordered was published in the Oregon Courier, a newspaper of said city, in its issues of the twentieth and twenty-seventh of March, and stated, among other things, that said street when graded should be covered with crushed rock. The city being the owner of several tracts of land adjoining said street, in order to comply with the provisions of the charter requiring the owners of two thirds of the adjoining property to join in the petition, on the twenty-second of April, by authority of the council, the mayor and recorder signed said petition on behalf of the city, whereupon the council by resolution declared that said petition had then been signed by the owners of two thirds of the adjoining property, and the said notice was republished in the same newspaper for four successive weeks. On the sixth of May an ordinance establishing the grade of said street was introduced, and, by order of the council, was thereafter published in said paper, and on the twentieth of June was passed and approved. At its meeting on the twentieth of June the council, having under consideration the improvement of said street, made and caused to be entered in its records the following order: "It appearing that the owners of two thirds of the property have signed the petition for the improvement of Seventh Street, the council proceeded to assess and declare the assessment on the adjacent property for the improvement of said street." At the same meeting of the council an ordinance declaring the assessment on the adjacent property for the improvement of said street was introduced, and, by order, published in said paper, and on the fifth of August passed and approved, and the recorder, by order of the council, entered said assessment in the docket of city liens, and published notice thereof in said paper. On the thirteenth of July an ordinance providing for the manner of improving said street was introduced, and, by order, published in said paper, and on the fifth of August was passed and

approved, and the recorder, by order of the council, published a notice inviting sealed bids for the work, and, in pursuance thereof, a contract was duly let for said improvement. This ordinance and contract provided for grading said street and covering it with gravel instead of crushed rock, as prescribed in the published notice. No remonstrance against said improvement was ever presented to the council by any one prior to the commencement of this suit, though the plaintiffs live in said city, saw the improvement as it was being made; and not until the contractor had completed about four fifths of the work was this suit commenced by twelve plaintiffs, of whom five had signed said petition. A temporary injunction was granted, which the court upon the trial dissolved, and rendered a decree dismissing the complaint, from which the plaintiffs appeal. Affirmed.

*C. D. & D. C. Latourette, Geo. C. Brownell,* and *G. E. Hayes,* for Appellants.

*Harvey E. Cross, and Emmet B. Williams* (*Richard Williams,* and *Chas. H. Carey* on the brief), for Respondents.

MR. JUSTICE MOORE delivered the opinion of the court:

Did the council have jurisdiction to make the improvement? is the question presented by this appeal. The charter of Oregon City furnishes two methods for acquiring jurisdiction to make street improvements: (1) Sections 67–71 provide that the council may make street improvements by publishing a notice of its intention, particularly describing the street and character of the improvement, in four issues of some weekly newspaper of said city, and if no remonstrance from the resident owners of two thirds of the property abutting on said street be presented within ten days from the final publication of said notice, the council shall have authority to make the

improvements described in the notice; (2) Section 93 provides that when the owners of two thirds of the property adjoining a street shall in writing petition the council to establish a grade or improve a street, the same may be done without giving any notice. When the owners of two thirds of the adjacent property signed the petition, jurisdiction was given the council to make the improvements prayed for, and accomplished the same result that could have been obtained by the publication of a notice, and the failure to remonstrate. The record shows that the notice of intention to improve with crushed rock was republished for the required period after the petition was signed on behalf of the city, and it must be presumed, in the absence of any allegation to the contrary, that such notice was published by order of the council, and hence it acquired jurisdiction to make the improvement described in the notice.

1. Appellants contend that the petition was altered without their consent, after it had been signed by the petitioners, and that the council had no jurisdiction to make said improvement with gravel. The petition shows that the words, "to said grade and improved with gravel," had been interlined therein, and much evidence was taken to show that this change had been made after it had been signed by the petitioners. The evidence shows that one T. P. Randall wrote the petition, and, upon consultation with the mayor, it was agreed that it should state the kind of improvement intended, whereupon Mr. Randall, in the presence of the mayor, made the interlineation before any names had been secured thereto. The mayor and Mr. Randall both testify to this fact, while other witnesses testify that they have no recollection of seeing the interlineation when the petition was submitted to them. We think it conclusively appears from the evidence that the petition contained the interlineation before any person signed it, and was sufficient to give the council

jurisdiction to make the improvement with gravel. Juris-
diction was acquired by the publication of the notice to
grade the street to the established grade for its full width
and cover it with crushed rock, and by the petition for the
same grade with a cover of gravel. Appellants contend that
since the notice prescribed crushed rock the council had
no authority to substitute gravel therefor. "If," says
Judge ELLIOTT, "power is conferred upon the council, and
two methods of exercissng it are prescribed, it will be
sufficient to sustain the assessment if it affirmatively ap-
pears that it was well executed in either of the modes
prescribed": Elliott on Roads and Streets, 378. The
council adopted gravel, and the plaintiffs cannot have
been injured thereby unless the cost of making the im-
provement with it exceeded that of crushed rock, or unless
the latter material was superior to gravel for street pur-
poses. The evidence shows that the rock available for
that purpose was rotten, would soon be ground into powder,
was not so serviceable, and would cost when laid upon the
street thirty cents per cubic yard more than gravel. From
this it would appear that there was a double advantage in
the use of gravel in consequence of its superiority and
cheapness.

2. Appellants attack the petition, and attempt to show
by evidence that it did not contain the names of the own-
ers of two thirds of the adjacent property. They allege
in their complaint that after the petition was signed by
the mayor and recorder, "that such petition so constituted,
then failed to contain the signatures of two thirds of the
adjacent property owners on said street along the line of
the proposed improvements." Assuming without decid-
ing that they could attack the petition in a collateral pro-
ceeding, does their complaint present any issue upon this
question? The charter provides that when the owners of
two thirds of the adjoining property petition the council
to improve a street, jurisdiction is thereby acquired for

that purpose. It is the amount of property represented upon the petition, and not the number of names, which gives the council jurisdiction. If one person who owned two thirds of all the property adjoining a street should petition the council for its improvement, and any number of other property owners should remonstrate against it, the council would have jurisdiction to make the improvement. The complaint then raises no issue upon the question, and all evidence taken in support of said allegation was immaterial, and subject to respondent's exception to its introduction.

3. Appellants also contend that there is nothing in the record of the council's proceedings to indicate that the cost of said improvement was to be assessed against their property. Some testimony was offered by appellants tending to show that they had no knowledge that the proposed improvements would be assessed against their property, and a stipulation was entered into between the parties to the effect that each plaintiff would testify that he had no knowledge of any alleged defect in the proceedings of the city council relative to the street improvement until the contract therefor had been let. Admitting that they had no actual knowledge, they are chargeable with constructive notice of the fact if the provisions of the city charter have been observed. An ordinance was on the thirteenth of July, 1891, duly published in said paper, which provided "That there be and is hereby assessed on each of the following described lots and parts of lots lying on Seventh Street between High Street and the city limits, the amount severally indicated herein, and representing in the aggregate the probable cost of the proposed improvement of Seventh Street in Oregon City as hereinafter assessed and determined by the council, and the recorder is hereby instructed to enter the same in the docket of city liens." Then follow the names of the owners, a list of the property and the amount assessed against it. Sec-

tion 74 of the charter provides that in case the notice be
for the improvement of a street or part thereof, the coun-
cil may proceed to ascertain and determine the probable
cost of making such improvement, and assess upon each
lot or part thereof liable therefor, its share of such cost;
and section 75 provides that when the cost has been ascer-
tained and determined, the council must declare the same
by ordinance, and direct the recorder to enter a statement
thereof in the docket of city liens.   The improvement of
a street must in all instances be made by an assessment
upon abutting property.   Section 96 provides that when
any street is to be repaired, the council must declare, by
ordinance, whether the cost thereof shall be assessed upon
the adjacent property or be paid out of the general fund
of the city.   The repair of a street may, in the discretion
of the council, be made from the general fund of the city
or by assessment of the property.   When a street is to be
repaired, the council must declare, by ordinance, how it
must be made; but when a street is to be improved, the
council has no discretion in the matter, and must make it
by assessment of the adjoining property.   In the case at
bar, the published notice provided for an improvement,
and the petition prayed for the same; and when the coun-
cil adopted an ordinance for the improvement of the street
by assessing the adjoining property, it was a compliance
with the provisions of the charter, and appellants had con-
structive notice from the provisions of the charter, from the
published notice of intention to improve, from the peti-
tion, and from the published ordinance, that said improve-
ments would be made at the expense of their property.

4.   The record shows that at a regular meeting of the
council held on the —— of June, 1891, the following
order was adopted:  "Moved that the council sit as a
board of equalization on the evening of the twentieth of
June, 1891," whereupon the council adjourned to meet at
that date.   The council met at the time named, and an

ordinance declaring the assessment was introduced and
read at that meeting, but the record does not show that
any notice was given the owners of the property affected
by the assessment that said council would at that time sit
as a board of equalization.   The complaint does not allege
that this notice was not given; but in the reply it is
alleged that after the petition was filed, the plaintiffs had
no notice or knowledge of any of the proceedings of the
council in relation to said improvement until after the
contract therefor had been let.   The complaint does not
raise the issue of a failure to give this notice; and since
the record shows that the council fixed a time for the
meeting to equalize the assessment, in the absence of any
allegation to the contrary, it must be presumed that the
council gave the required notice of such meeting.

Jurisdiction having been obtained to make the improve-
ment, the right to levy the assessment is unquestioned.
It is a fundamental principle, as old as Magna Charta,
that before any person can be deprived of his property he
must have an opportunity to be heard.   In cases of assess-
ment, this means that at some time and place he shall
have a hearing, or an opportunity to be heard, before the
assessment becomes irrevocably fixed (*Stewart* v. *Palmer*,
74 N. Y. 184; 30 Am. Rep. 289), not for the purpose of
avoiding the burden cast upon his property by the improve-
ment, but that it shall not bear an unequal portion.   The
ordinance declaring the assessment against the property
was not passed or approved until the fifth of August, at
which time the recorder was ordered to enter the assessment
in the docket of city liens, and it thereby became irrevoc-
ably fixed.   If at any time prior to the approval of the ordi-
nance the appellants had an opportunity to be heard upon
the question of the proportion of the burden which their
property should bear, this was their day in court," and the
assessment would have been made by "due process of law."
Notice of the time and place of meeting for the purpose of

Statement of the case.

equalizing the assessment must in all cases be given, as it is the process by which jurisdiction is given to determine what proportion of the burden each tract should bear. The council having jurisdiction to make the improvement and apportion the expense thereof, the assessment is valid, and it follows that the decree must be AFFIRMED.