Argued 29 June, decided 31 July, 1905.

## DUNIWAY v. PORTLAND.

81 Pac. 945.

PORTLAND CHARTER — CONSTITUTIONALITY OF SECTIONS 400 AND 401.

1. Section 400 of the Portland Charter of 1903 is not void under the Fourteenth Amendment to the Constitution of the United States, or under sections 10 or 18 of Article I of the Constitution of Oregon, and it is retroactive in its effect, and section 401 of said charter is not void under Const. Or. Art. VII, § 9.

CONSTRUCTION OF SECTION 400 OF PORTLAND CHARTER OF 1903.

2. Section 400 of the Portland Charter of 1903, relating to reassessing benefits received through void public improvements, is intended to afford the city a supplementary remedy for collecting the costs of improvements undertaken in good faith, but annulled by the courts.

CONCLUSIVENESS OF ACTION OF COUNCIL IN REASSESSING.

3. Under Portland Charter of 1903, § 400, authorizing a reassessment for local improvements in case of the invalidity of the original assessment, and requiring notice of the reassessment to be given to abutting property owners, so that they may file objections thereto, and further requiring a hearing on such objections and a determination of their validity, the determination of the council that the objections are invalid is conclusive, and the question cannot be collaterally raised, unless the council has proceeded fraudulently in making the reassessment.

CHARGING FRAUD OF COUNCIL ON REASSESSMENT.

4. In attacking the good faith of the council in making a reassessment under section 400 of the Portland Charter of 1903 the fraud alleged must relate to the new proceeding.

INSUFFICIENT PLEA OF FRAUD BY COUNCIL.

5. In a suit to annul a local improvement assessment, an allegation in the complaint that the board of public works accepted the improvement in reliance upon the fraudulent representations of the contractors and the city engineer is insufficient to charge the board of public works with fraud in accepting the improvement.

REASSESSMENT NOT AN ABUSE OF TAXING POWER — CONSTITUTION.

6. A reassessment for local improvements, under Portland Charter of 1903, § 400, authorizing such reassessment where the original assessment has been adjudged invalid, cannot, in the absence of fraud on the part of the city council in making the reassessment, or the board of public works in accepting the improvement, be regarded as an attempt to raise money for the private use of the contractors and holders of warrants under the taxing power of the municipality, in violation of Const. Or. Art. XI, § 9.

EFFECT OF ACCEPTANCE OF IMPROVEMENT BY CITY AUTHORITIES.

7. In the absence of fraud, the acceptance of a local improvement by the public authorities is conclusive as to the manner in which the work was done, as against collateral attack.

NOTICE OF RESOLUTION TO REASSESS FOR LOCAL IMPROVEMENTS.

8. Under Portland Charter of 1903, § 400, authorizing a reassessment for local improvements in case of the invalidity of the original assessment, the council need not, in the absence of charter requirement, give abutting owners notice, nor afford them a hearing, prior to adopting the resolution directing the city auditor to prepare a preliminary reassessment, and the absence of notice does not make the proceeding arbitrary.

REQUIREMENTS OF REASSESSMENT PROCEEDINGS.

9. The proceedings connected with reassessing property for local improvements, under section 400 of Portland Charter of 1903, are entirely statutory and no other proceedings or forms are required than are there prescribed.

SUFFICIENCY OF REASSESSMENT NOTICE.

10. The notice of reassessment given in this matter under section 400 of the Portland Charter of 1903 was sufficient, as it contained every statement required.

MUNICIPAL CORPORATIONS — ADJOURNMENT OF MEETING — QUORUM.

11. A charter provision that a less number of the council than a quorum may adjourn from time to time, is not affected by an ordinance providing that if a quorum is not present, the chief of police shall notify the absentees to appear, but if they still absent themselves, the members present shall adjourn to the next regular meeting, the ordinance applying to only those instances in which the chief of police acts. Therefore, where there is no quroum present and the chief of police does not notify the absentees to attend, the members present may adjourn to a date specially set, under the charter section, and need not adjourn to the next regular meeting in accordance with the ordinance.

PROCEEDINGS OF MUNICIPAL COUNCILS — PRESUMPTION OF REGULARITY.

12. In the absence of affirmative proof to the contrary, it will always be presumed that the proceedings and adjournments of municipal deliberative bodies were regular and valid.

DELIBERATIONS OF COUNCIL — CONTINUANCE OF BUSINESS.

13. A motion of a city council that the matter of a reassessment be "continued on the table" until the next regular meeting, while expressed in inappropriate language, should be construed to effect a continuance of the business, and should not be construed as operating to lay the matter on the table, and thereby deprive the council of jurisdiction thereof.

OBJECTIONS TO ASSESSMENT — PRESUMPTION OF REGULARITY OF PROCEEDINGS.

14. Where the minutes of the meeting of a city council do not show what was done with objections to a reassessment for local improvements, and the reassessment ordinance was passed notwithstanding the objections, it will be assumed that they were considered by the council and found to be without merit.

EFFECT OF REASSESSMENT ON ORIGINAL WARRANTS.

15. The reassessment for local improvements, provided for by Portland Charter, 1903, § 400, in case of the invalidity of the original assessment, is merely supplementary to the regular proceedings, and is effective, not only to secure a valid assessment of benefits, but to reach back and validate the improvement warrants issued under the original proceeding, so far, at least, as the reassessed benefits are sufficient for that purpose.

From Multnomah: MELVIN C. GEORGE, Judge.

Statement by MR. CHIEF JUSTICE WOLVERTON.

This is a suit for an injunction by R. R. Duniway against the City of Portland and others. The plaintiffs are owners of property abutting upon that portion of East Burnside Street, between East Eighth and East Twenty-eighth streets, in the City of Portland, affected by an attempted street improvement, of which they complain. The im-

provement was made under the charter of 1898. Before the original assessment made against the abutting property for such improvement was entirely collected, plaintiffs instituted a previous suit to enjoin the collection of such as affected them, and were successful. Among other things, it was alleged in the complaint in that suit that the contractors did not comply with their contract in making the improvement, specifying in what particulars, and that they did not complete the improvement until long after the time agreed upon, but that, notwithstanding such noncompliance with the contract and ordinances, and that the city was without jurisdiction, and that, notwithstanding the city engineer did not file written acceptance of the work as required, and the board of public works did not publish notice of the completion and acceptance of said street work, nor of the time and place where written objections to the acceptance thereof would be considered, the said board of public works, nevertheless, in reliance upon the fraudulent representations of the contractors and the city engineer and his deputies and inspectors, undertook to and did accept said street, and the officers of the city thereupon, but without consideration, issued street warrants of the city upon the fund for the improvement of East Burnside Street to the defendants Smyth & Howard, the contractors, and John W. Cook, for $10,742.40, that being the contract price for doing the work, and that, upon the issues thus tendered, the court made no findings, but declared the assessment void upon jurisdictional grounds alone.

These facts are set out in the complaint in the present suit, and it is further alleged that the contractors did not make any attempt to substantially comply with their contract, and that the city engineer, his deputies and inspectors, did not make any effort to require such compliance, but that said officers knowingly, wilfully and fraudulently

represented to every one concerned that said contract was being and had been performed in strict accordance with its specifications, and thus obtained special warrants from the city for the full contract price for making the improvement, without consideration, and in fraud of the city, its taxpayers, and especially the plaintiffs; "that, if any reassessment should be made and collected, the money would at once be drawn from the city treasury to pay said void special street warrants, and would not be of any value to the City of Portland, and the same would be made solely for the benefit of said street contractors, their bondsmen, and the owners of said void special warrants"; that, notwithstanding the fraudulent acts of the contractors and of the city engineer and his subordinates were well known to the common council of the city, it did, on February 18, 1903, arbitrarily, and without giving the matter consideration, and without notice to plaintiffs or giving them an opportunity to be heard, adopt a resolution for the reassessment of the benefits for the improvement; that the auditor did not make the proposed reassessment within 10 days, but that a deputy made and filed a so-called reassessment on March 7, 1903, by copying the first attempted assessment and making pencil notations on the same where parties under the first assessment had paid the same, so far as it affected them, and by making a computation of interest where parties had not paid; that the auditor caused notice to be published, but did not mail a notice to the parties affected by the reassessment, as required by the charter; that on March 31, 1903, plaintiffs applied for and obtained a preliminary injunction from the circuit court for Multnomah County, enjoining further proceedings in the matter of such reassessment; that on July 7, 1903, the complaint was dismissed by the court, thus dissolving the injunction, which decree was subsequently affirmed by the supreme court, but without prejudice to any question

as to the cancellation of the alleged fraudulent warrants in any appropriate proceeding involving the question; that the mandate in said cause was sent down and entered in the circuit court March 12, 1904; and that on March 31, 1903, plaintiffs filed with the auditor objections to said reassessment proceedings on grounds: (1) That the city has no power or authority to make the reassessment; (2) that the city has not complied with the conditions precedent by which to acquire jurisdiction to make the same; and (3) that the improvement has not been made by the contractors so as to authorize any legal or equitable assessment of benefits to be made, and that any attempt in that direction would be a taking of plaintiffs' property without due process of law. Following these allegations the complaint sets up numerous alleged irregularities attending the action of the common council in disposing of the objections and adopting the reassessment ordinance, which sufficiently appear in the opinion. The relief demanded is that the street warrants be canceled as fraudulent and void, and the assessment of benefits be invalidated as contrary to the constitutional rights of the plaintiffs. A demurrer to the complaint being sustained, the complaint was dismissed, and plaintiffs appeal.    AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. Ralph Roloefson Duniway.*

For respondents there was a brief over the names of *Lawrence Alexander McNary* and *John P. Kavanaugh*, with an oral argument by *Mr. Kavanaugh.*

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

This is the second time this case has been here, so far as the present inquiries are concerned, upon substantially the same allegations of fact. It is not to be regarded as a second appeal, because a new and original suit has been instituted, and some of the original questions, which were

unalterably settled by the first cause, have been elimina-
ted. All others are now insisted upon, but some of these
have been practically determined, and, being of recent in-
vestigation, we are constrained to regard them also as set-
tled. It was eventually determined that the former case
was prematurely commenced, on the ground that it was
sought to enjoin the threatened adoption of an ordinance
directing a reassessment of benefits; such reassessment
being, as was said, "within the jurisdiction and scope of
the legislative powers of the council." The principle upon
which the holding was predicated is that it could not be
ascertained in advance (1) whether the offensive ordi-
nance would eventually be adopted, (2) whether such
ordinance as the common council might in its discretion
finally adopt would in any manner intrench upon plain-
tiffs' rights in the premises, and (3) whether any threat-
ened injuries to the plaintiffs might not be susceptible to
redress by writ of review or an appeal from the proceed-
ings themselves.

1. Those questions now involved here, but practically
determined by the former suit, are: (1) That section 400
of the present charter does not authorize the taking of
private property without due process of law, and does not
therefore contravene the Fourteenth Amendment of the
Federal Constitution, and likewise it is not inimical to the
provisions of sections 10 and 18 of article I of the state
constitution; (2) that said section 400 does not authorize
a reassessment without regard to benefits, contracts or
rights, and is retrospective in its operation; and (3) that
section 401 of the present charter was not inimical to sec-
tion 9 of article VII of the constitution of this State, as lim-
iting the jurisdiction of the circuit court in its appellate and
supervisory capacity or functions. These matters we need
not allude to further, and will pass to those that are essen-
tial to the final disposition of the cause.

2. Let us first inquire as to the purpose of section 400 of the charter and what procedure is authorized by its provisions. Such inquiry will aid us materially in arriving at a correct solution of the questions remaining. The section provides, in so far as it is pertinent to this inquiry, that whenever any assessment for any local improvement, which has been made or may hereafter be made by the city, has been set aside, annulled and declared or rendered void, or its enforcement refused by any court having jurisdiction, whether directly or by virtue of any decision of such court, or when the council shall be in doubt as to the validity of such assessment, it may by ordinance make a new assessment or reassessment upon the lots, blocks or parcels of land which have been benefited by such improvement, to the extent of their respective and proportionate shares of the full value thereof. It is further provided that such reassessment shall be based upon the special and peculiar benefit of such improvement to the respective parcels of land assessed at the time of its original assessment, except that interest may be added from the date of delinquency, at the discretion of the council. The manner of procedure is thereupon prescribed. The purpose of the act is manifest from its reading. It proceeds upon the assumption that assessments for benefits received by reason of local public improvements having been made are liable to fail on account of some irregularity in the procedure or some nonobservance of jurisdictional provisions in the charter, and is designed to supply a curative procedure to supplement the preceding one that has failed. It awards a new and supplementary remedy for impressing upon the abutting property a lien for the cost of the special benefits, not to exceed the original cost of the improvement, because of the failure in the first instance to carry the undertaking to a successful termination. In order to set this statute or charter provision

in motion, there must have been an actual attempt in good faith under the regular procedure to make the improvement, and to have the cost thereof assessed against the abutting property, resulting in a failure through some non-observance of charter provisions, by oversight or mistake, which proceeding must also have been annulled by a court of competent jurisdiction by reason of such irregularity or irregularities, or the common council must have been in doubt as to its validity. These things are conditions precedent to invoking the aid of the provision for the new assessment or reassessment. These latter become, therefore, supplementary to the ordinary or prior regulations, whether under this or the preceding charter of 1898, for making the improvement. They are designed to take up the new assessment or reassessment where the old has failed, and to carry to a successful termination that which has been declared or considered a nullity, thus correcting and validating the whole.

Statutes of similar purpose are not without precedent, and are founded in justice and equity. They afford an adequate remedy for the enforcement of payment of the costs of local improvements against persons who have been peculiarly benefited thereby, through the enhancement of the value of their property and the rendering of it more accessible and useful, and who ought, therefore, in morals and public justice, to bear such burden to the extent of the benefits received, if necessary; otherwise, they will escape, although they have profited materially and perhaps largely by the venture of which they complain. The remedy is not for a collection of the old assessment as was that afforded by section 156 of the old charter, but for a reassessment of benefits derived from the failed improvement, not failed because not made, but failed because of an irregularity in the procedure for impressing the lien for the costs of the benefits, and a collection of such reas-

sessment. In support of the procedure and principle involved, see *Thomas* v. *Portland*, 40 Or. 50 (66 Pac. 439); Cooley, Taxation (2 ed.), 306; *Frederick* v. *Seattle*, 13 Wash. 428 (43 Pac. 364); *Cline* v. *Seattle*, 13 Wash. 444 (43 Pac. 367); *State ex rel.* v. *City of Newark*, 34 N. J. Law, 236; *City of Emporia* v. *Norton*, 13 Kan. 569; *Schenley* v. *Commonwealth*, 36 Pa. 29 (78 Am. Dec. 359); *City of St. Paul* v. *Mullen*, 27 Minn. 78 (6 N. W. 424); *Mattingly* v. *District of Columbia*, 97 U. S. 687 (24 L. Ed. 1098); *Spencer* v. *Merchant*, 125 U. S. 345 (8 Sup. Ct. 921, 31 L. Ed. 763.)

3. Now it is strenuously insisted that the work was not performed or the improvement made by the contractors in accordance with the specifications of their contract with the city. We may well assume, and we think it to be the law — at least, it is reason and conformable to justice — that the contract must have been substantially complied with, or the improvement made in substantial accord with the undertaking, otherwise, it would not be allowable under any conditions to make the reassessment. It is plain that an assessment could not be levied for a different improvement than the one contemplated by the regular procedure, and for a like reason one could not be levied for an improvement that was not made to conform in all material respects to the one proposed. Mr. Cooley says: "In the new proceedings the party concerned will have the opportunity to watch the various steps, and to be heard in review of them, that he has in any case, and will be precluded by nothing that has taken place in the proceedings which have proven abortive. The reassessment will be for the purpose merely of enforcing against him a duty which he was likely to evade, by reason of nonfeasances or misfeasances of the officers who ought to have enforced it": Cooley, Taxation (2 ed.), 310. And, in further elucidation of the subject, Mr. Justice TAYLOR says, in *Rork* v. *Smith*, 55 Wis. 67, 82 (12 N. W. 408, 414): "The city authorities

have no power to charge the plaintiff's land with any amount as a special tax for doing work in grading the street in front of his lot, unless such grading was done in substantial accordance with the plans and specifications previously adopted by the city authorities." This was a reassessment proceeding. By the provisions of the section under consideration notice is required to be given to the abutting property owners, and they may file objections in writing to the reassessment. As to these, the common council must grant a hearing and determine their validity.

Plaintiffs filed written objections, as indicated by the complaint; but it is not clear from their reading whether they were intended to call in question the manner in which the work was done, or whether in accordance with the specifications. But, however this may be, the council, as we shall see presently, presumably passed upon the objections, and the plaintiffs are now precluded from again raising the issue in this collateral way, except it be shown that the council has itself proceeded fraudulently : Elliott, Roads & Streets (2 ed.), § 608 ; *Chance* v. *Portland*, 26 Or. 286 (38 Pac. 68); *Callister* v. *Kochersperger*, 168 Ill. 334 (48 N. E. 156); *Craft* v. *Kochersperger*, 173 Ill. 617 (50 N. E. 1061); *McEneney* v. *Town of Sullivan*, 125 Ind. 407 (25 N. E. 540); *De Puy* v. *City of Wabash*, 133 Ind. 336 (32 N. E. 1016); *Cason* v. *City of Lebanon*, 153 Ind. 567 (55 N. E. 768).

4. No fraud, as it pertains to the common council, is adequately alleged. The fraud must relate to the proceeding on the reassessment, because the original proceeding is an invalidated past transaction, and we look in vain for any implication of fraud as it respects the action of the common council in this latter relation.

5. Furthermore, to put at rest any controversy touching the action of the board of public works in accepting the improvement in the first instance, we may say that

the allegations of fraud, as it relates to their action, are insufficient, tested as they are by demurrer. The pertinent averment is that the board, in reliance upon the fraudulent representations of said contractors and the said city engineer and his deputies and inspectors, undertook to and did accept said street. This falls far short of charging the board of public works even with fraud in the premises, so that their acceptance of the improvement must be held to be valid and binding in any collateral attack wherein it is sought to question the manner in which the work was done. We hold, therefore, that the case made is insufficient to warrant inquiry touching the manner in which the work was done or improvement made.

6. In this view of the allegations of the complaint, the procedure cannot be regarded as an attempt under the taxing power of the municipality to raise money for private use; that is, for the contractors, and for Cook, a holder of the warrants, contrary to the Constitution of Oregon, Article XI, Section 9.

7. The case being such that the abutting owners were not allowed to go behind the action of the board of public works or of the common council in accepting the improvement, to inquire into the manner of doing the work, it cannot avail plaintiffs against the contractors and the holders of the warrants, and their demurrer to the complaint is just as effective as that of the city.

8. Objections are made to the manner of inaugurating the reassessment proceeding. The first step was the adoption of a resolution, which, after reciting that the original proceeding had been declared void by a decree of the circuit court for Multnomah County, and that the abutting property had been peculiarly benefited by the improvement, defined the district specifically and peculiarly benefited, and directed the city auditor to prepare within 10

days a preliminary reassessment upon the lots, blocks and parcels of lands within the district, to the extent of their respective proportionate shares of the full value of the improvement, and to give due notice to the property owners affected. In this relation it is alleged that the resolution was adopted arbitrarily, without notice to plaintiffs or an opportunity to be heard with reference thereto; but it is a sufficient answer thereto that the charter provides for no such notice or hearing.

In pursuance of the resolution, the auditor published a notice as follows:

"REASSESSMENT FOR IMPROVEMENT OF EAST
BURNSIDE STREET.

In compliance with a resolution adopted at the regular meeting of the council, held February 18, 1903, declaring the district benefited by the improvement of East Burnside Street, from the east line of East Eighth Street to the west line of East Twenty-eighth Street, and directing the auditor to prepare a preliminary assessment upon the lots, blocks, and parcels of land within said district: Now, Therefore, Notice is Hereby Given that such assessment is now on file in the auditor's office, and that any objections to such assessment must be filed in writing with the auditor within 10 days from the 18th day of March, 1903, the last day of publication of this notice, and notice is further given that said objections will be heard by the council at a meeting to be held on the first day of April, 1903, and all persons aggrieved thereby or interested therein must be present at said meeting, and are warned not to depart therefrom until such reassessment has been completed.

Thomas C. Devlin, Auditor.
Portland, Oregon, March 7, 1903."

It is then further alleged that the auditor did not forthwith mail to the property owners any kind of notice whatever, and that the only notice sent to them was a copy of the published notice. The preliminary reassessment con-

sisted in adopting the old assessment in all material respects, but adding interest when the assessment had not been paid, as section 400 prescribes.

9. As against these preliminary steps in the procedure, looking to a reassessment of benefits, many objections, other than those just alluded to, were interposed. Among these, it is insisted that the resolution should have contained findings touching the substantial completion of the improvement, its value, and the benefits conferred; that the auditor did not make the preliminary assessment within 10 days; that the notice published did. not comply with the resolution or section 400 of the charter, nor did it state the amount of the assessment, nor that it was upon any property, nor what property, nor the amount of the assessment against any parcel; and counsel conclude by requesting the court to consider "whether this general notice published in this case is sufficient notice to make due process of law, when it is the only notice given." In answer to these manifold objections it is only necessary to observe that the common council has followed in all essentials the requirement of section 400.

10. A resolution defining the district benefited by the improvement, and directing the auditor to make the preliminary assessment, and fixing the time within which it should be done, was adopted. The auditor gave notice ample in form to notify interested parties of all that was being done, and this was properly served by publication. The published notice being regular, an irregularity attending the further giving of personal notice through the mails is not fatal to the procedure: Section 420, Charter. This is all that need be said touching the regularity of the preliminaries of the reassessment proceeding. The notice provided was sufficient to give the plaintiffs their day in court upon the reassessment of benefits, and, having been

given in the essential manner designated, they are precluded by the record.

11. Another insistence of counsel for appellants is that, if the common council proceeded regularly in the acquirement of jurisdiction to make the reassessment, it lost such jurisdiction before taking action respecting the objections filed, or adopting the ordinance approving and confirming such reassessment. It is alleged that on April 1, 1903, the date fixed for hearing objections to the preliminary reassessment, that being a regular meeting of the common council, there was no quorum present, and the chief of police did not notify the members of the council as required by Ordinance 10906, and that, in violation of such ordinance, the council adjourned until April 2, at 9.30 a. m., which was not a day for the regular meeting of the council. It is further alleged that on said 2d day of April the common council on motion continued the hearing of said objections until the next regular meeting, being April 15. These proceedings, it is urged, deprived the council of further jurisdiction in the premises, by reason of the adjournment to April 2 and not to the next regular meeting, because not in consonance with rule 1, adopted by said Ordinance No. 10906 for the government of the meetings of the council. The rule provides that, "should there not be a quorum present, it shall be the duty of the chief of police immediately to inform the absent members (except those known to be unavoidably detained) that their presence is required to enable the common council to proceed to business. Should they fail to appear on such notice, the members present shall adjourn to the next regular meeting which may have been established by the common council." From the allegations it will be seen that the chief did not notify the absent members as the rule requires, and it does not appear that any were unavoidably absent, so that the conditions did not exist which

made it incumbent upon the common council to adjourn until the next regular meeting. Looking to the charter (section 66), we find that a majority of the members of the council shall constitute a quorum to do business, except as otherwise provided, but a less number may meet and adjourn from time to time, and may compel the attendance of the absent members. This regulation permits just such an adjournment as was taken, and rule 1 is not inconsistent therewith, as it contemplates that the adjournment shall be to the next regular meeting only when the efforts by taking action as therein prescribed have been unavailing to get a quorum.

12. The presumption is always in favor of the regularity of the meetings and adjournments of such deliberative bodies, and, unless it is otherwise affirmatively shown by appropriate allegations and proofs, they must be deemed authoritative and effective: *State* v. *Smith*, 22 Minn. 218; *People* v. *Common Council*, 5 Lans. 11; *Staats* v. *Washington*, 45 N. J. Law, 318. For all that appears therefrom, the adjournment to April 2 was regularly taken, and the proceeding on that day in continuing the hearing upon the objections until the next regular meeting was regular.

Like objections are made to the adjournment from the regular meeting of March 16, 1904, to the next day, when the ordinance was finally adopted ; but these are untenable for the reasons as above.

13. At the regular meeting of April 15, 1903, on motion, "the matter of the reassessment" and the remonstrance were "continued on the table until the next regular meeting," and so on from regular meeting to regular meeting until finally disposed of. It is suggested that the council lost jurisdiction by causing the matter to lie on the table. The record nowhere shows that the measures were laid on the table. The manner of continuance from meeting to meeting was by motion that they be continued "on the

table." There was no meeting that it was not thus continued, so that the matter was kept in hand, as though it was thought to be necessary to regularly continue the business, or else the council could not finally act upon it. While the language employed was not altogether appropriate for a continuance in the regular way from meeting to meeting, it was not effective to lay the matter on the table, and should be resolved in accordance with the plain and obvious intention of the council, which was simply to effect a continuance of the business from meeting to meeting. The objection is not, therefore, well taken.

14. It is next objected that the council refused to consider the objections, but merely ordered them to be placed on file. The fact is that the minutes of the meeting as set out by the complaint do not show what was done with the objections. A remonstrance was placed on file, but we cannot say that this means the objections. The record being silent as to the objections, we must assume that they were considered and found to be without merit, because the council subsequently passed the reassessment ordinance as though they were not in the way. This is in accordance with the rule above discussed in favor of the regularity of the proceedings, unless affirmatively shown to be otherwise.

15. This leaves but one other question for consideration, which is as to the alleged invalidity of the warrants issued in payment of the improvement. The contention is that, as the former proceeding was invalidated, the warrants were also without validity, and should be declared void. The nature, however, of the present proceeding, as we have seen, is to supplement the regular proceeding, and to carry to a successful termination that which was inaugurated primarily ; and it is effective, if regularly pursued, not only to secure a valid assessment of benefits, but to reach back and validate the warrants, so far, at least,

as the reassessed benefits are sufficient for that purpose, and they will not be invalidated in any respect or in any amount until the occasion arises therefor.

Finding no errors in the record, the decree of the circuit court will be affirmed.                    AFFIRMED.