Argued March 22, decided April 26, 1910.

## HOUCK *v.* CITY OF ROSEBURG.

[108 Pac. 186.]

MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — ASSESSMENT OF BENEFITS—INJUNCTION.

1. Where, in proceedings for the levy of an assessment for a street improvement, the council has acquired jurisdiction, equity will not enjoin the collection of the assessment of benefits not assessed against all the property benefited on the complaint of the owner benefited by the improvement, who, with knowledge of its progress, permitted its construction without objection.

MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — JURISDICTIONAL DEFECTS—ASSESSMENT OF BENEFITS.

2. Where, under Laws 1895, p. 548, the proceedings necessary to the jurisdiction of a city council in constructing a sewer are the declaration by ordinance whether the cost thereof shall be assessed to the property directly benefited, the appointment by the council of disinterested viewers to view the street and location of the sewer and determine what property

is directly benefited thereby, and the extent and proportion of such benefit, the failure of the viewers to assess all the property jointly benefited is not jurisdictional.

MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — SPECIAL ASSESS-
MENTS—SUFFICIENCY OF NOTICE.

3. Where by the charter of a city (Laws 1895, p. 548, §100), after viewers have reported the advisability of the construction of a sewer and the property benefited, it is provided that a notice of the report shall be published for 20 days in a newspaper, the constructive notice given thereby to an owner benefited by the improvement is sufficient to invoke the rule against him that, if without objection he permits the sewer to be constructed, he cannot complain of irregularity in the proceedings leading up to the assessment for benefits.

MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — SPECIAL ASSESS-
MENTS—FRAUD—INJUNCTION.

4. If the viewers and city council in constructing a sewer fraudulently omit from the assessment the lots on one side of the street, and assess the whole cost of the sewer on the property on the other side, the proceedings would be void, and ground for equitable relief.

MUNICIPAL CORPORATIONS — ENJOINING SPECIAL ASSESSMENT — CON-
CLUSIVENESS OF COUNCIL FINDINGS.

5. In a suit to enjoin the collection of a sewer assessment brought by a property owner benefited by the improvement, because other property owners on the other side of the street who were also benefited were not assessed, the findings of the council as to the amount of property, which was directly benefited and the proportionate share thereof to be charged to each lot is conclusive in the absence of fraud.

MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—FRAUD—EVIDENCE.

6. In a suit to enjoin the collection of a sewer assessment because property on the other side of the street was not assessed, evidence, held insufficient to show that the council acted fraudulently, so as to authorize equitable relief.

MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — APPOINTMENT OF
VIEWERS—OBJECTIONS.

7. Where under a city charter provision (Laws 1895, p. 548), it is incumbent on the council to appoint viewers to look over the proposed route of a sewer, and determine what property is directly benefited, an objection that the viewers were appointed by the mayor, and not by the council, is not tenable, where at a council meeting the viewers were appointed by the mayor, and the council acquiesced, and such appoint-ment was recognized and reported as part of the transaction of the council.

From Douglas: JAMES W. HAMILTON, Judge.

Statement by MR. JUSTICE EAKIN.

This is a suit by Mary E. Houck, M. C. Gregory and Leona E. Abraham, against the City of Roseburg, a muni-cipal corporation, A. N. Orcutt, its recorder, and J. D. Jarvis, its marshal, to enjoin the defendant city from col-

lecting a sewer assessment. On December 5, 1904, the city council of defendant city decided to construct a sewer on the south side of Oak Street, from Chadwick Street to Main Street, and by ordinance declared that the cost thereof should be assessed upon the property directly benefited thereby. On December 15, 1904, at a meeting of the council, the mayor appointed W. S. Hamilton, F. W. Haynes, and J. F. Barker viewers of the sewer, which appointment is recorded in the minutes of that meeting of the council as business transacted by the council. On January 5, 1905, the viewers filed with the city recorder their report that they had investigated the location of the sewer, that the sewer is badly needed, recommended its construction, and found that the following property (with the names of the owners thereof) will be directly benefited by the the improvement, viz.: "Geo. E. Houck, Lot 5, Block 42; Sol. Abraham Estate, Lot 4, Block 41; M. C. Gregory, Lot 5, Block 41; Orville Wilson, Lot 4, Block 40; City of Roseburg, Lot 5, Block 40." They also recommended that the cost of the sewer be assessed to the above-named property, each lot to bear its proportionate share of such expense, according to the number of lots adjacent to and benefited by the improvement. Thereafter, on the same date, the recorder of the city published in the "Plaindealer," a weekly newspaper published in Roseburg, for a period of 20 days, a notice that the city had determined to construct the sewer, and that the viewers had ascertained and determined that the lots named in the viewers' report, describing them, with the names of the owners, would be directly benefited by the construction of the sewer, according to the number of lots owned by each person, each lot to bear its proportionate share of the expense of such construction. No objection to the findings and determination of the viewers was filed by the owner of any of the property within 10 days from the final publication of the notice, which last publication was

the 6th of February, 1905. The council determined the probable cost of the construction of the sewer, and an ordinance was presented, assessing upon each of the lots one-fifth of the estimated cost, which ordinance appears to have been read the first and second time on April 3, 1905, but was not finally passed upon until February 5, 1906. In this ordinance each of the lots was assessed $56. The sewer was constructed prior to April 3, 1905. On May 1, 1905, plaintiff Leona Abraham filed with the recorder a protest, directed to the council, against the assessment of the cost, on the ground that the assessment is upon the property on one side of the street only, whereas direct benefits accrue to the property on both sides alike. By the complaint it is alleged that the five corresponding lots on the opposite side of the street are equally benefited with the lots on the south side, and that the action of the council in omitting from the assessment the lots on the north side of the street "was willful, arbitrary, and intentional, and was purposely done," knowing that the property so omitted was equally benefited with the property of plaintiffs. By sections 98, 99, 100, and 101 of the charter of the City of Roseburg (Laws 1895, p. 548), it is provided that the council shall have power to construct sewers, and to declare, by ordinance, before doing the same, whether the cost thereof shall be assessed upon the property directly benefited thereby; that, if it so declares, the council shall appoint disinterested freeholders to view the street and location of the proposed sewer, who shall ascertain and determine what property is directly benefited by such sewer, and the extent and proportion thereof. Upon the report being filed, the recorder shall immediately give notice thereof by publication for 20 days in some newspaper published in the city, specifying with convenient certainty the streets on which the sewer is to be located and the property ascertained and determined by the viewers to be benefited thereby.

Within 10 days from the final publication of such notice the owner of any property ascertained to be directly benefited may file with the recorder any objections he may have to such findings, and the council shall at the next meeting consider such objections.

The answer denies parts of the complaint, and alleges that the plaintiffs appeared before the council by their attorney, and asked that the sewer be constructed on the south side of Oak street, as there was urgent need of it by the property owners along the south side of that street, and, further, pleads the ordinances and other proceedings by the council in relation thereto as a compliance with the terms of the charter.

The cause was tried upon the evidence, and findings and decree rendered for defendants. Plaintiffs appeal.

AFFIRMED.

For appellants there was a brief over the names of *Mr. Albert Abraham* and *Mr. C. L. Hamilton* with an oral argument by *Mr. Abraham.*

For respondents there was a brief over the names of *Mr. Albert N. Orcutt* and *Mr. Frank G. Micelli* with an oral argument by *Mr. Orcutt.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. But one question is raised by the brief of appellants, viz.: Is the assessment of the cost of the construction of the sewer upon the property on the south side of the street void because it does not include all the property directly benefited? It may be stated as a rule in proceedings for the levy of an assessment for a street improvement that, if the council has acquired jurisdiction, equity will not grant an injunction to prevent the collection of the assessment for irregularities occurring in the subsequent proceedings on the complaint of the owner of property benefited by the improvement, who, with knowledge of its progress, permitted its construction without objec-

tion.  Smith, Law of Munic. Corp. § 1263; *Wilson* v. *City of Salem,* 24 Or. 504 (34 Pac. 9, 691) ; *Barkley* v. *Oregon City,* 24 Or. 515 (33 Pac. 978) ; *Strout* v. *Portland,* 26 Or. 294 (38 Pac. 126) ; *Clinton* v. *Portland,* 26 Or. 411 (38 Pac. 407) ; *City of Denver* v. *Dumars,* 33 Colo. 94 (80 Pac. 114) ; *Klepsch* v. *Donald,* 18 Wash. 150 (51 Pac. 352.)

2. The proceedings necessary to jurisdiction are that the council, having determined to construct a sewer at some designated location, shall declare by ordinance whether the cost thereof shall be assessed to the property directly benefited, the appointment of the council of disinterested viewers who shall view the street and location of the proposed sewer and ascertain and determine what property is directly benefited thereby and the extent and proportion of such benefits, and publication by the recorder of the notice provided by Section 100 of the charter.  Laws 1895, p. 548; *Clinton* v. *City of Portland,* 26 Or. 411 (38 Pac. 407.)

3. In *Wingate* v. *Astoria,* 39 Or. 603, 604 (65 Pac. 982, 983), Mr. Justice BEAN says:

"It is the settled law of this State, supported by the weight of authority, that, where the municipal authorities have jurisdiction to improve a street, a property owner who, with knowledge of such improvement, makes no objection until after the work has been completed, cannot enjoin the collection of the assessment on the ground that the proceedings have not been regular."

As there stated, the objection that the local assessments were not in fact made according to the benefits does not go to the jurisdiction of the council to make the improvement, and therefore cannot be the basis of a suit to enjoin the collection of the assessment after the improvement has been made.  It is immaterial that the plaintiffs did not have actual notice.  The construction notice provided for by Section 100 of the charter is all that is required.  This gave plaintiffs ample opportunity to be heard as to any irregularities in the proceedings, and, not having

taken advantage of that opportunity until after the work has been done, they are precluded thereby from asking equitable relief. *Barkley* v. *Oregon City,* 24 Or. 515, 520 (33 Pac. 978) ; *King* v. *Portland,* 38 Or. 402 (63 Pac. 2: 55 L. R. A. 812) ; *Paulson* v. *Portland,* 16 Or. 450, 463 (19 Pac. 450 : 1 L. R. A. 673).

4. It is further alleged in the complaint that the action of the viewers and the council in omitting from the assessment the lots on the north side of the street and assessing the whole cost of the sewer upon the property above described, was willful, arbitrary, and intentional, and purposely done. Such conduct on the part of the viewers or the council, if unreasonable, oppressive, and subversive of the rights of the plaintiffs, would amount to a fraud upon plaintiffs and render the proceedings void and ground for equitable relief. *Masters* v. *Portland,* 24 Or. 161, 165 (33 Pac. 540; *Beckett* v. *Portland,* 53 Or. 169, 172 (99 Pac. 659.)

5. But in an equity proceeding the findings of the council as to the amount the property is directly benefited by the improvement and the proportionate share thereof to be charged to each lot are conclusive in the absence of fraud. *Duniway* v. *Portland,* 47 Or. 103, 112 (81 Pac. 945) ; *Hughes* v. *City of Portland,* 53 Or. 385 (100 Pac. 942.)

6. The evidence in this case does not substantiate that allegation of the complaint. It also appears that Geo. E. Houck, the husband of plaintiff Mary E. Houck, and his attorney, Buchanan, appeared before the council and asked for the construction of this sewer, representing that all the owners of the property on the south side of Oak Street were anxious to have the sewer constructed. There is a conflict in the evidence as to whether there was a petition presented or not, but that is immaterial as the council is authorized to act in such cases upon its own motion ; and the evidence offered, tending to show the con-

tents of the petition, does not establish that the petitioners thereby agreed to pay the cost of the construction of the sewer. However, it appears that the members of the council were of the opinion that the sewer would not directly benefit the property on the north side of the street, and were opposed to the construction thereof if the expense was to be assessed equally upon the property on both sides of the street, and the matter was held in abeyance until, as the members of the council understood, it was agreed by Geo. E. Houck for himself and the other owners of the lots on the south side of the street that the sewer was to be constructed on the south side of the street and at the expense of the property on that side. Several members of the council testified that it was the understanding between Houck and Buchanan, his attorney, and the council, that the sewer should be constructed on the south side of the street, the property owners on that side would pay for it, and that it would not have been constructed otherwise. They are corroborated in this to some extent by evidence tending to show that Gregory at least objected to the city permitting the property on the north side of the street to be connected with the sewer, on the ground that it was the private sewer of the property on the south side of the street. Without determining that Leona Abraham knew that the council was constructing the sewer with the understanding that it was to be paid for by the lot owners on the south side, it is disclosed that the council and viewers were not acting arbitrarily or willfully, or from any improper motive in so assessing the cost of the sewer against the property on the south side of the street, nor were they seeking or taking any undue advantage of plaintiffs or any of them. The council had a right to assume that plaintiffs were acquiescing in the assessment of the cost as made by the viewers or they would have filed with the recorder objections thereto within the time fixed by the charter, viz., February 16,

1905, being 10 days from the date of the last publication of the notice, and, if they had done so, the council might then have abandoned the improvement if they saw fit. Albert Abraham, the husband of plaintiff Leona Abraham, and plaintiff M. C. Gregory, were consulted by Geo. E. Houck as to the need of the sewer at the time it was brought before the council, and they favored its construction. Geo. E. Houck was acting for his wife, with her knowledge and consent, in securing its construction, and the action of the council in relation thereto was not an unreasonable or oppressive exercise or abuse of its powers, and therefore the case is not one of equitable cognizance.

7. The objection that the viewers were appointed by the mayor, and not by the council, is without merit. The record shows that at a council meeting the viewers were appointed by the mayor in which the council acquiesced, and such appointment is recognized and recorded as part of the transactions of the council.

The decree of the lower court is affirmed.

AFFIRMED.

Decided April 26, 1910.