STATE ex rel. ALEXANDER W. LOWNSBERRY and Another v. DISTRICT COURT OF BLUE EARTH COUNTY and Another.

STATE ex rel. HARRISON L. SCHMITT v. SAME.[1]

November 8, 1907.

.Nos. 15,305, 15,306—(12, 13).

**Local Improvement—Reassessment.**

A judgment, in an action brought for that purpose, declaring the contract entered into by the city of Mankato for the improvement of one of its streets void for the failure of the city officials to comply with certain statutory requirements, does not preclude the assessment of benefited property in reassessment proceedings.

**Charter of Mankato.**

The provisions of the charter of the city of Mankato, authorizing a reassessment in all cases where the original assessment was for any reason set aside by the court, are curative in their essentials and operate to remedy and heal all defects in the contract for the improvement, and in the proceedings leading up to the original assessment, and a judgment declaring void the contract under which the improvement was made becomes inoperative.

**Same—Validating Contract.**

The charter provisions authorizing reassessment validated the contract under which the improvement was made, so far as the liability thereby created exceeded the statutory limit of municipal indebtedness, and all other defects leading up to the execution of the contract.

**Benefits—Effect of Stipulation.**

A stipulation by the city attorney, on the hearing of the application for an order confirming the reassessment, that the allegations of relators' answer to the effect that the improvement was of no benefit to their property were "proven," *held* not equivalent to an admission that the improvement was in fact no benefit, and is construed as a concession that evidence to that effect had been introduced for the consideration of the court.

**Same—Question of Fact.**

This concession, together with the determination of the board of public works that relators' property was benefited by the improvement, presented a question of fact for the trial court to determine.

[1] Reported in 113 N. W. 697; 114 N. W. 654.

**Same—Conclusion of Court.**

In the general conclusion to confirm the reassessment, the trial court must be deemed to have found that relators' property was in fact benefited.

**Delay Caused by Injunction.**

A delay in making the assessment, or a failure to make the same at the time prescribed by law, caused by the pendency of injunction proceedings in which the assessment is enjoined, does not bar the right of the municipality to proceed as soon as relieved from the injunction.

**Case Followed.**

City v. Mullen, 27 Minn. 78, followed and applied.

Writ of certiorari issued by the supreme court upon relation of Harrison L. Schmitt and Alexander W. Lownsberry and others, to review a judgment of the district court for Blue Earth county, Lorin Cray, J., confirming a reassessment for a local improvement in the city of Mankato.   Affirmed.

In relators' objections to the city treasurer's application for judgment was this allegation:

"That these respondents [relators] became the owners of the real estate against which this assessment is being prosecuted long after said alleged improvement was completed without notice or knowledge or any reason to believe that said city of Mankato, or any other person or party, had or claimed to have any right to make or collect any tax or assessment of any kind upon or from said property, or these respondents, for said improvement or any part thereof; that said city of Mankato has lost any and all rights that it ever may have had to levy special assessments upon the property fronting on said improvement and especially upon the property of these respondents, on account of all the matters hereinbefore set forth and especially on account of its inexcusable laches and delay in proceeding to make such special assessments for said improvement immediately after the execution of said contract, as provided by the charter of said city of Mankato and as provided by law.

"That had said city of Mankato proceeded to make and levy assessments upon the property fronting upon said improvement, as provided by the charter of said city and by law, these respondents would

never have purchased the property against which judgment is now asked by said city for such assessment, except upon the condition that enough of the purchase price agreed to be paid for said premises by the respondents should be retained by them to hold them safe, harmless and indemnified against any assessment for such improvement; that by reason of the laches and negligence of said city of Mankato and its failure to make such assessments according to the terms of said charter and according to law, these respondents paid full value for said premises and will be damaged to the extent of any assessment that may be enforced against their said property for said improvement."

At the hearing upon that application the city attorney and relators' attorneys stipulated that the facts as set forth in the answers and objections were to be taken as true, but at the suggestion of the court the stipulation was modified so as to read "proven," subject to the objection that they are incompetent, irrelevant and immaterial, and that the answers set up no defence whatever to the proceeding, it being a reassessment proceeding. It was also stipulated that no record of the proceedings were at any time filed in the office of the register of deeds of. Blue Earth county.

Section 34 of chapter 6 of the charter of Mankato is as follows:

"All assessments levied under the provisions of this chapter shall be a paramount lien on the real estate on which the same may be imposed, from the date of the warrant issued for the collection thereof."

*Harrison L. Schmitt*, for relators.

*C. O. Dailey*, for respondents.

BROWN, J.

Certiorari to review the judgment of the district court of Blue Earth county confirming an assessment for a local improvement in the city of Mankato. The facts are as follows:

In April, 1902, the city council of the city of Mankato determined by resolution to macadamize and pave a certain portion of. Broad street in that city. No petition by the property owners was presented requesting the improvement. The council acted under authority of the charter, which clothed that body with power to order such improvements without a petition. Bids were solicited for· the work,

but before any contract had been let one Diamond, a general tax-payer of the city, brought an action against the city and the officers thereof to restrain and enjoin further action in the matter, on the ground that the liability thereby incurred on the part of the city would exceed the limit of indebtedness authorized by law. At the time of the commencement of the action an order to show cause was obtained from the district court directing the city authorities to show cause why a temporary injunction should not issue restraining and enjoining the officers from entering into the contract, pending the hearing, and restraining the making of any special assessments upon property abutting the proposed improvement to defray the cost and expense of the same. The order to show cause came on for hearing on April 18, when the court directed a temporary injunction to issue restraining the officers of the city from entering into any contract for the proposed improvement whereby any liability on the part of the city would be incurred which would necessitate the payment thereof during the fiscal year of 1902, or any following fiscal year whatever, from the current funds of the city, "except such as can be lawfully raised by special assessment made upon real estate and property benefited by said improvement, other than real estate and property belonging to said city of Mankato."

This was a material modification of the restraining order incorporated in the order to show cause, and restricted the city officers only to the extent just stated. After the issuance of this injunction the city authorities, in attempted compliance with the restrictions therein contained, entered into a contract with the Barber Asphalt Paving Company for the improvement of the street. This contract expressly provided that payment for the work should be made out of money lawfully raised by special assessments upon benefited property, other than property belonging to the city. The asphalt company thereafter entered upon the street and the performance of the contract, completing the work about July 20, 1902.

Subsequent to the date when the contract was entered into, however, the plaintiff in the action, Diamond, applied to the court for leave to file a supplemental complaint, in which he attacked the validity of the contract, which had then been made, and sought to have it declared void and the officers of the city restrained from perform-

ing the same, for the reason that the requirements of the charter relating to such contracts had been violated. No new injunction, however, was issued, and the asphalt company was under obligation to proceed with the work, or subject itself to the penalty fixed by the contract for failure of performance within the period therein given. The case came on for trial on the original and supplemental complaints, resulting in a judgment in July, 1902, declaring the contract for various reasons null and void, and restraining and enjoining the city authorities from performing the same or levying any assessments upon property abutting upon the improvement to defray the cost and expense of the work. The cause was then removed to this court upon defendant's appeal, where it was affirmed. Diamond v. City of Mankato, 89 Minn. 48, 93 N. W. 911, 61 L. R. A. 448.

At the time of the rendition of the judgment in the district court, the contract had been practically performed. The work was fully completed a few days after the decision of that court. Subsequent to the decision of this court, just referred to, the asphalt company brought an action in the federal court against the city to recover the value or contract price of the work performed, on the theory that as the city officers had neglected to make special assessments upon benefited property, or to take other means for paying the debt created by the contract, the city was liable as for breach of contract. Recovery was had in that action against the city for the entire amount due for the work performed, about $40,000. No effort was made by the city authorities after the rendition of the decision in the Diamond case, or during the pendency of the action in the federal court, to assess benefited property, as provided by the contract and the charter of the city of Mankato. But subsequent to the recovery in the federal court some sort of an understanding appears to have been reached between the property owners and the city authorities, resulting in an assessment against the property abutting upon the improvement to the extent of something over one-half the cost of the same.

This assessment was made in accordance with the provisions of the city charter bearing on the subject, and when presented to the district court for confirmation it was set aside, for the reason, as we understand the record, that the contract under which the improvement was made was, as held in the Diamond case, void; hence the property

owners were not liable to special assessment to defray the expense incurred thereunder. Immediately thereafter the property was reassessed, under the provisions of the charter, in which proceeding the relators herein appeared, interposed a defense, and objected to the reassessment for various reasons, among others: (1) That the contract under which the improvement was made was void, and furnished no authority for an assessment or reassessment, and, further, that the city was, under the injunction issued in the Diamond case, perpetually restrained by the court from making the same; (2) that if the city had the right to make the reassessment, the right was lost by not making the original assessment immediately upon entering into the contract for the improvement; (3) that the city had no right to make the assessment or the reassessment by reason of the fact that the improvement was of no benefit to abutting property; and (4) that the provisions of the charter authorizing a reassessment, in cases where the original assessment was for some reason set aside by the court, has no application to a case of this kind. The court overruled all these objections, made findings of fact, and ordered judgment confirming the reassessment.

This case is controlled, as we view the matter, by City of St. Paul v. Mullen, 27 Minn. 78, 6 N. W. 424, and other recent decisions, in which that case has been applied and followed. The charter of the city of Mankato provides in general terms that in all cases where an assessment for local improvements is for any cause whatever set aside or declared void by the court the board of public works shall upon notice thereof proceed without unnecessary delay to make a reassessment. That, in connection with other provisions of the charter, is substantially the same as the provisions of the charter of St. Paul construed in the Mullen case. In the Mullen case it appeared that an improvement of the nature of that here involved could be made by the public authorities only upon petition of the majority of the property owners to be affected. Without such a petition the city officers ordered the improvement, and entered into a contract under which it was completed. Thereupon a special assessment was levied upon the abutting property, which the court set aside upon objection by the property owners, on the ground that the contract under which the improvement was made was unauthorized and void.

Whereupon, under similar charter provisions, a reassessment was made and held valid.

In the case at bar the most that can be said respecting the contentions of relators is that the contract under which this improvement was made was void. The court so declared it, and in this respect the case is identical with the Mullen case. It is not important upon what ground the court declared the contract void, so long as the defects or omissions were of such a nature that they could be cured by legislation. It was held void for several reasons, none of which, in point of legal contemplation, differs from those in the Mullen case. Had it appeared that the contract was entered into in violation of an injunction of the court, and the work completed by the contractor in the face of a command of the court to refrain from doing so, or in violation of some constitutional prohibition, or unauthorized under any circumstances, a different question would be presented. But there was no injunction in force at the time the contract was entered into prohibiting it, nor was there a constitutional prohibition, and the subject-matter was within the authority of the city council. The only command of the temporary injunction was that no contract should be entered into which should involve the liability of the city, "except to the extent that payments thereunder could lawfully be made by special assessments." The injunction restraining the city from performing the contract or assessing the abutting property was not issued until the work was practically completed, so that the contract violated no command of the court in the Diamond case. The mere fact that it was held void for the reasons stated in that case does not distinguish it in any proper view from the Mullen case. State v. District Court of Ramsey County, 95 Minn. 183, 103 N. W. 881; State v. District Court of Ramsey County, 95 Minn. 70, 103 N. W. 744; State v. District Court of Ramsey County, 98 Minn. 63, 107 N. W. 726; State v. District Court of Ramsey County, 97 Minn. 147, 106 N. W. 306; 11 Cyc. 553, and citations.

Counsel for relators presented his case with much earnestness and ability, but under a mistaken view of the scope and legal effect of the reassessment provisions of the charter. It is urged that the contract was void because the indebtedness thereby created exceeded the limit prescribed by law, because it was not the result of competitive

bidding, and because the city had no authority to omit municipal property from the payment of a proper proportion of the expense of the improvement.  Conceding, with relators, the invalidity of the contract upon all the grounds urged, including those not here specifically mentioned, the legal rights of the parties are not changed.  The reassessment provisions of the charter, upon which the proceedings are based, are in all essential respects curative statutes, and are to be construed in harmony with the principles of law applicable to such legislation.  Schintgen v. City, 117 Wis. 158, 94 N. W. 84; Nottage v. City, 35 Ore. 539, 58 Pac. 883, 76 Am. St. 513.  It is elementary that the legislature may by curative acts remedy and validate all such defects and omissions in proceedings at law, or otherwise, as it might previously have dispensed with.  Cooley, Const. Lim. (5th Ed.) 457; Steele Co. v. Erskine, 39 C. C. A. 173, 98 Fed. 215; Sutherland, St. Const. (2d Ed.) 675; 21 Am. & Eng. Enc. (2d Ed.) 44, and cases cited.  All the defects in the contract under consideration, relied upon by relators, come within this rule.

The legislature could have refrained from fixing a limitation upon municipal indebtedness, or imposed the indebtedness upon the city notwithstanding the fact that the contract exceeded the limit fixed. Merchants Nat. Bank of St. Paul v. City of East Grand Forks, 94 Minn. 246, 102 N. W. 703.  And, in any event, the indebtedness thus created was void only to the extent of the excess over the statutory limitation.  11 Cyc. 553, and citations.  The legislature could have authorized the letting of contracts for public improvements without the requirement that they be given to the lowest responsible bidder. It could have provided for the payment of any proportion of such improvements properly falling upon municipal property from the public funds, precisely as the city authorities here propose to do.  The charter works this result, and the reassessment proceedings are to be treated as though the defects and omissions here complained of were not defects or omissions at all.  Whitney v. City, 147 Pa. St. 351, 23 Atl. 395, 30 Am. St. 740; Johnson v. Board, 107 Ind. 15, 8 N. E. 1; Nottage v. City, supra.  They are all removed by the curative statute.  City of Seattle v. Kelleher, 195 U. S. 351, 25 Sup. Ct. 44, 49 L. Ed. 232; Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. E. 443.

The fact that there was a judgment in the Diamond case adjudging the contract void and restraining the municipal officers from performing it, or making special assessments to defray the cost of the same, does not change the situation. Richman v. Supervisors, 77 Iowa, 513, 42 N. W. 422, 4 L. R. A. 445, 14 Am. St. 308; Gill v. Patton, 118 Iowa, 88, 91 N. W. 904. The judgment has no operation or effect in the reassessment proceedings; the irregularities and defects in the contract, made the basis of the judgment, being all cured and obliterated by the charter authorizing the reassessment. City v. Black, 132 Pa. St. 568, 19 Atl. 276, 6 L. R. A. 802, and cases cited; Grim v. Weissenberg, 57 Pa. St. 433, 98 Am. Dec. 237; Mills v. Charleton, 29 Wis. 400, 9 Am. 578; Re Van Antwerp, 56 N. Y. 261; Desty, Tax. 647. Besides, the judgment in the Diamond case can have no greater force or effect than a judgment in the original assessment proceedings declaring the contract invalid and annulling the assessment. In either case, the curative features of the charter prevail. This in no way conflicts with constitutional rights, for a judgment does not come within the prohibitions of the fundamental law against legislation impairing the obligations of contracts. Livingston v. Livingston, 173 N. Y. 377, 66 N. E. 123,.61 L. R. A. 800, 93 Am. St. 600; Morely v. Lake Shore & M. S. Ry. Co., 146 U. S. 162, 13 Sup. Ct. 54, 36 L. Ed. 925. In the case above cited from Pennsylvania a street had been paved under authority of a statute which, at the suit of property holders, was subsequently declared unconstitutional and void, whereupon the legislature passed a law authorizing a reassessment, which the court sustained. The case is substantially like that at bar.

It is also urged that the assessment was unauthorized, and should be set aside, because, as claimed, the improvement was of no benefit to the abutting property, and that this fact is conceded by the city. Of course, assessments of this kind are based and have their foundation in the theory that private property has been specially benefited by the public improvement, and it necessarily follows that, if no benefit has in fact accrued, no assessment should be made to defray the cost thereof. On the trial it was stipulated by the parties that the allegations of the answer setting forth relators' objections to the assessment were "proven," and it is insisted in this court that this was in effect a stipulation that the improvement in question was no bene-

fit to relators' property, because they so allege in their answer. We are unable to concur in this contention. It was evidently not the purpose of the city attorney in entering into this stipulation to concede as a fact that the improvement in question was of no benefit to the abutting property. The effect of the stipulation should be limited to an admission that relators produced proof to that effect, thus making it, in connection with the determination of the board of public works that the improvement was a benefit, a question of fact for the court to determine. The court did not find expressly upon this question. No request therefor was made by counsel, and relators cannot be heard to insist that their proof on the subject is conclusive. While the statutes providing for the hearing of matters of this kind and the confirmation of special assessments do not expressly contemplate the making of findings of fact and conclusions of law as in other cases, it is clear that, where there are controverted questions, findings may properly be made to definitely settle the dispute. In the general conclusion to confirm the assessment, the court must be taken to have reached the conclusion that relators' property was in fact benefited.

The case of Patterson v. Barber Asphalt Paving Co., 96 Minn. 9, 104 N. W. 566, has no application. The part of the street involved in that case was never improved under the contract, and that litigation in no way involved relators' property.

The delay by the city was not fatal to the right to make the assessment. The whole controversy was tied up for several years in litigation, and it is apparent that the city proceeded with the assessments at the first opportunity after the litigation was ended. Nor is it important upon what ground recovery was had against the city in the federal court. The fact remains that the assessment of relators' property is to defray the cost of an improvement fronting thereon, and not to reimburse the city for damages in an action of tort, wholly disconnected with the improvement.

What has been said covers in the main all the principal questions discussed in the briefs, and in affirming the action of the court below we apply the rule of the Mullen case, which has become the settled law of the state.

Judgment affirmed.

JAGGARD, J. (dissenting).

I dissent.   I agree that the contract was void, among other reasons because it necessarily involved municipal indebtedness in excess of the limit fixed by law.   That the largest part of the cost of the improvement was to have been defrayed by local assessments did not prevent the necessity of paying out of general funds the part actually chargeable to the city.   This is not a case where a contract could be valid as to part and invalid as to such illegal excess.   It must have been performed as a whole, or not at all.   The paving for which the city must have paid out of public moneys was an integral and essential part of the work.   The contemplated improvement would have been practically impossible and unreasonable, unless made as contracted for, including the part for which the city was required to pay.

The present difference of opinion in this court concerns the curative effect of the reassessment proceedings.   In previous decisions this court has gone to an extreme—and, it seems to me, a dangerous extreme—in holding that a contract which has been so illegally executed that the assessment to pay for it is necessarily void may become the basis of a valid reassessment, and that the curative effect of the reassessment extends to "defects, jurisdictional or otherwise."   The immediate dissent depends upon what "otherwise" means in this connection.

To my mind the curative effect of reassessment proceedings should be restricted to defects in the execution of a contract, which contract, within the prescribed limits of indebtedness, the city is authorized to execute, but which it has failed to execute in the manner prescribed by law.   Such a contract is ultra vires in a secondary and restricted sense only, and may generally be validated by performance according to its terms.   The rule is otherwise, however, where the contract is forbidden.   This contract was forbidden, because it necessarily exceeded the prescribed limit of indebtedness, and might not be valid in one part and invalid as to another part.   It pushes the doctrine of affirmance by reassessment altogether too far to hold that such a contract may be made good by going through the motions of assessment a second time.   The result of any other view must be a partial repeal of the provisions limiting municipal indebtedness.   Such implied re-

peals are opposed to the normal rules of construction and to plain dictates of public policy.

On January 24, 1908, the following opinion was filed:

PER CURIAM.

The question upon which a reargument of this cause was granted, viz., "whether in view of section 34, c. 6, of the charter of Mankato, the lien of the assessment in question is superior to the title and rights of relators; they being purchasers of the property for a valuable consideration before the levy of the assessment and without notice of these proceedings," though covered by the assignments of error and referred to in the brief of relators, was not impressed upon the court as at all important and was not considered in the former opinion. Attention was called to the question and its importance emphasized on the application for a rehearing, and because it had not been considered and disposed of, a reargument was granted.

A majority of the court are of the opinion that the assessment lien is paramount to the rights of relators, and the former opinion is adhered to. Morey v. City of Duluth, 75 Minn. 221; Hamilton, Special Assessments, 708; City of Seattle v. Kelleher, 195 U. S. 351.