Argued November 27, suit dismissed December 11, 1917, rehearing
denied February 26, 1918.

## WILSON v. CITY OF PORTLAND.

(169 Pac. 90; 171 Pac. 201.)

**Pleading—Judgment—Answer.**

1. Where there was traversed matter in defendant's answer
strongly appealing to court of equity against granting plaintiff any
relief, the sustaining of plaintiff's motion for decree on the pleadings
was error.

**Municipal Corporations — Public Improvements — Assessments — Re-
straining Collection—Grounds.**

2. Ordinarily a court of equity will not interfere to restrain the
collection of a special assessment for municipal improvements in cases
of mere illegality or irregularity, but its jurisdiction is confined to
cases where the tax is not authorized by law, or is assessed on prop-
erty not subject to taxation, or by persons without authority.

   [As to injunction to restrain the collection of taxes and assess-
   ments, see notes in 69 Am. Dec. 198; Ann. Cas. 1915C, 755.]

**Municipal Corporations—Public Improvements—Special Assessments.**

3. Portland City Charter, Section 397, relating to assessment for
street improvements, declares that no assessment shall be held invalid
by reason of mistakes, delays, errors, or irregularities in any act or
proceeding in the improvements of a street.   Section 400 declares
that, whenever an assessment for the improvement of any street shall
be annulled, or when the council shall be in doubt as to the validity
of any such assessment, the council may by ordinance make a new
assessment or reassessment on the land benefited by such improve-
ment.   Plaintiff, the owner of property abutting on a street, sought to
have set aside as a cloud on his title the lien of a special assessment
on the ground that, when the proceedings for the improvement were
initiated, the street had already been paved, and that thereafter no
other pavement had been constructed.   *Held* that, without any show-
ing that the city was not ordering reassessment for improvements
already made, plaintiff was not entitled to any relief, it seeming
that he was seeking to avoid assessments for improvements already
constructed, and hence a decree on pleadings in favor of plaintiff,
whose complaint alleged the foregoing acts, was erroneous, particu-
larly as the city's answer alleged that the assessment was a reassess-
ment on account of omissions in the first; for equity will not interfere

to restrain the collection of an assessment for mere illegality or irregularity.

ON PETITION FOR REHEARING.

**Municipal Corporations — Street Improvements — Reassessment — Amendment of Jurisdictional Defects in Ordinances.**

4. Under Portland City Charter, Section 400, all manner of errors and irregularities in ordinances for assessment of street improvements may be corrected whether jurisdictional or otherwise, and a reassessment made for pavement already laid.

**Municipal Corporations — Street Assessments — Freeholder's Right to be Heard.**

5. Under such charter provision, a freeholder of Portland should make his objection to street improvements in the beginning, since it is never too late for the city to amend a defect in ordinance for assessment therefor, provided only that somewhere the freeholder has had opportunity to be heard before his property is taken for payment of the tax.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1.   Statement by MR. JUSTICE BURNETT.

In this suit against the City of Portland the plaintiff declares that he is the owner in fee simple of some realty abutting upon the east side of East Twenty-ninth street in that city.   His initiatory pleading recites that by virtue of a certain ordinance passed by the council of that municipality his holding was assessed in certain sums for the cost of improving the half street already mentioned; and further traces the procedure to the point where it is ripe for sale of the property to satisfy the liens so created.   The only objection urged by plaintiff against the action of the city in the premises is found in this allegation:

"That at the time the said proceedings for the improvement of said east half of East Twenty-ninth Street, within the limits above specified were initiated, said street had already been improved with bitulithic pavement, and during all of the time which had elapsed since said date, said improvement of said street which had been so made continued to exist and still exists, and no improvement of any nature whatever was made by said City of Portland nor by anyone

after the initiation of said proceedings and up to the present time, and plaintiff's said real property has been assessed as aforesaid for an improvement which has not been made either in whole or in part.''

Contending that these transactions constitute a cloud upon his title, he prays that they all be declared void and the cloud removed.

After sundry denials the answer of the city avers in substance that the property in question was situated in Olmsted Park, which was owned by one B. M. Lombard, who was desirous of having the streets in that addition, together with the east half of East Twenty-ninth Street, improved, and requested the city to make the improvement at the expense of his property; that the city, in obedience to the express desire of Lombard, undertook to make the improvement, and that in the course of the proceedings one of the employees in the city engineer's office, in preparing the initiatory resolution, omitted therefrom the words ''the east half of the street,'' which omission was not noticed by anyone, either the city officials or the interested freeholders. The answer then charges that the proceedings were carried forward according to the original intention of the city and the property owners; that the street was actually improved and the work completed without a discovery of the error until the city officials came to make up assessments apportioning the cost of the undertaking, whereupon they consulted Lombard, who expressed himself as being satisfied with the improve ment and stated that the cost thereof should be paid; that plaintiff and Lombard suggested that the better course to pursue would be to take supplemental proceedings to make an assessment against the property especially benefited by the improvement, and further represented that they would not make any objection

or protest against such supplemental proceedings and that the resulting assessments would be paid or bonded.

The answer proceeds substantially to state that, relying on the representations of Lombard and the plaintiff who, it avers, is acting for the former in the premises, the city took the steps mentioned in the complaint resulting in the assessment to which objection is now made; all without any dissent on the part of any property holder. The defendant further alleges that in reliance upon the statements and representations of the plaintiff and Lombard, and upon the validity of the proceedings which they now assail, it issued and delivered warrants for city improvements to the assignee of the contractor installing the pavement in the sum of $1,917.85, which warrants are still outstanding. It is also charged that the betterment was valuable; that it increased the worth of each of the lots in the amount assessed for its payment; and that all of the owners thereof, without making any protest, sat by and watched the improvement being made, well knowing that it was intended by the defendant city to make the same at the cost of the owners of abutting property and assess the expense thereof against the same. It seems that an order was entered permitting Lombard to intervene and file an answer, and issue was joined not only upon the city's answer but also upon the answer of Lombard. At this stage of the proceedings the Circuit Court sustained the motion of the plaintiff for a decree against the defendant on the pleadings, and the city has appealed.

Reversed. Suit Dismissed.

For appellant there was a brief with oral arguments by *Mr. Walter P. La Roche,* City Attorney, and *Mr. Lyman E. Latourette,* Deputy City Attorney.

For respondent there was a brief and an oral argument by *Mr. William M. Gregory.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1, 2. Considered solely as a matter of procedure, the motion for a decree on the pleadings in favor of the plaintiff should not have been allowed because there was traversed matter in the city's answer strongly appealing to a court of equity against granting plaintiff any relief in the premises. The essence of this suit, however, is an attack upon an assessment upon abutting property for the purpose of paying for the improvement of a street. The canon by which said matters must be determined is laid down by Mr. Justice ROBERT S. BEAN in *Yamhill County* v. *Foster,* 53 Or. 124 (99 Pac. 286), in this language:

"It is a general rule that a court of equity will not interfere to restrain the collection of public revenue for mere illegality or irregularity in the proceedings, but its jurisdiction is confined to cases where the tax itself is not authorized by law, or is assessed on property not subject to taxation, or the persons exacting it are without authority in the premises, or have proceeded fraudulently, or some other ground of equitable interference is shown."

The rule has been applied to assessments similar to those of the case here involved, in *Lapp* v. *Marshfield,* 72 Or. 573 (144 Pac. 83).

3. Section 397 of the Charter of the City of Portland, in speaking of assessments for street improvements, declares:

"No such assessment shall be held invalid by reason of failure to enter the name of the owner of any lot or part of a lot or parcel of land so assessed or by a mistake in the name of the owner, or the entry of a name

other than the name of the owner, in said assessment, or in any acts or proceedings connected therewith, and no delays, mistakes, errors, or irregularities in any act or proceeding in the improvement of a street or the construction of a sewer or drain shall prejudice or invalidate any final assessment, but the same may be remedied by subsequent and amended acts or proceedings."  ·

Section 400 of the same Charter reads in part as follows:

"Whenever an assessment for the opening, altering or grading of any street, * * or for any local improvement which has been or may hereafter be made by the city, has been or shall hereafter be set aside, annulled, declared or rendered void, * * or when the Council shall be in doubt as to the validity of such assessment or any part thereof, the Council may, by ordinance, make a new assessment or re-assessment upon the lots, blocks or parcels of land which have been benefited by such improvement to the extent of their respective and proportionment shares of the full value thereof. * * Such re-assessment shall be made and shall become a charge upon the property upon which the same is laid, notwithstanding the omission, failure or neglect of any officer, body or person to comply with the provisions of this Charter connected with or relating to such improvement and assessment and notwithstanding the proceedings of the Council, Executive Board, Board of Public Works, or any officer, contractor or other person connected with such work may have been irregular or defective, whether such irregularity be jurisdictional or otherwise. * * "

Reverting to the single objection made by the plaintiff to the effect that the improvement already had been made, we note that within the terms of Section 400 this does not present an obstacle to the making of a new assessment, for that part of the charter refers to properties "which have been benefited by such improvement." This language clearly refers to a better-

ment already accomplished in fact. The case was
decided in the Circuit Court upon plaintiff's motion
for a decree upon the pleadings. In such a case the
moving party must be impregnably entrenched in the
statement of his case or he cannot prevail. The issue
presented by such a motion is one of law to the effect
that granting the truth of all that is alleged by both
parties yet the decision should be in favor of the one
making the motion. The complaint in this instance
discloses a proceeding for the imposition of an assess-
ment upon abutting property ostensibly carried on
with complete formality. The plaintiff does not offer
to pay any proper rating of the cost or declare that
the expense of the betterment has been paid by any-
one. He virtually adopts the improvement but his
pleading does not state enough to take the proceeding
out of what might be accomplished under Section 400
of the Charter contemplating renewed assessments for
work already completed under defective procedure.
Reverting to the rule of *Yamhill County* v. *Foster,* 53
Or. 124 (99 Pac. 286), we find that a tax for the pur-
pose of street improvement is authorized by the Char-
ter of the city. That instrument empowers the
municipality to levy such a charge upon abutting prop-
erty, and this authority is vested in the city council.
There is no charge that there has been any fraud in
any of the proceedings. In short, the complaint does
not differentiate the case from one where the city has
undertaken to make a new assessment, as of right it
may do, on the ground that the proceedings prior to
the actual making of the improvement were informal
or without jurisdiction. Until this is shown equity
cannot relieve the plaintiff, for he does not bring him-
self within the principle established in the Foster case.
The power of a city to make repeated assessments

under a charter like that of the City of Portland to pay for actual improvements already made has had the consideration of this court in *Phipps* v. *Medford,* 81 Or. 119 (156 Pac. 787, 158 Pac. 666), where a more complete discussion of the principle may be found.

The complaint itself discloses that the improvement has been made. It indicates that the plaintiff would enjoy the same without paying for it even what is fair. This savors strongly of an attempt to get something for nothing, which is inequitable even as against a municipality. Judged by his own pleading, the plaintiff was not in a position to urge his motion for a decree in his favor. His complaint does not state a cause of suit commending itself to a court of conscience, in that he does not offer to do equity. Upon the whole record, the case is properly disposed of by a decree dismissing the suit. It is so ordered.

REVERSED.          SUIT DISMISSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.

---

Rehearing denied February 26, 1918.

ON PETITION FOR REHEARING.          DENIED.

(171 Pac. 201.)

*Mr. W. M. Gregory,* for the petition.

*Mr. Walter P. La Roche,* City Attorney, and *Mr. Lyman E. Latourette,* Deputy City Attorney, *contra.*

Department 1.     MR. JUSTICE BURNETT delivered the opinion of the court.

In his petition for rehearing the plaintiff lays much stress upon the case of *Murray* v. *La Grande,* 76 Or.

598 (149 Pac. 1019), as being in direct conflict with the former opinion in the instant case. In prescribing the formula for street improvements the La Grande charter under which the Murray proceedings were had states in substance that when an improvement is proposed a committee of the council shall examine the property and make a report as to its valuation and extent and of the benefits to be derived thereby on account of the proposed improvement.

After receiving the report and before making any levy of taxes on plaintiff for the improvement the council must cause notice to be given in terms prescribed by the charter, giving sundry details not necessary here to mention, after which follows this language:

"After a compliance with this subdivision the council shall be deemed to have acquired jurisdiction to order the making of such improvements."

This is the only manner and time prescribed by the La Grande charter in which jurisdiction may be acquired. It is also said in the same section:

"If any assessment is set aside by order of any court the council may cause a new one to be made in like manner for the same purpose for the collection of the amount so assessed."

It will be noted that in the La Grande charter there is but one time and place in the process where the city may obtain jurisdiction; and the power of correction vested in the council does not include an amendment to cure the defect in the proceedings by which the acquisition of jurisdiction was attempted. It seems, therefore, that one effort to acquire jurisdiction would exhaust the prerogative of the council in that particular proceeding. It was conceded in that case that the City of La Grande had not done the things prescribed by its charter as the necessary foundation of jurisdiction.

4, 5. The authority of the City of Portland under its charter is much more extensive and far-reaching. As pointed out in the former opinion, Section 400 of the Portland Charter empowers the municipality to correct all manner of errors and irregularities whether they be "jurisdictional or otherwise." The distinction between the two charters is found in the fact that in that of La Grande there is provided but one point in the procedure where the city can acquire jurisdiction for any purpose and beyond which it cannot retrace its steps in its effort to amend its errors; while that of Portland enables the municipality to go back and begin again even to rectify any lack of authority not excepting the absence of jurisdiction itself. In brief the Portland Charter permits correction of jurisdictional defects while that of La Grande under consideration in the Murray case did not.

So it is a possible event that acting either directly or through the agency of contractors the city may have laid down a pavement as stated in the complaint herein before discovering its mistake in supposing it had acquired authority to do so. Yet it is not powerless to escape the consequences of such a blunder although the effort to extricate itself may involve the exercise of the taxing power. The complaint does not differentiate the plaintiff's grievance from such circumstances. He argues that a mere volunteer might pave a street and the city could pay for it, but his complaint does not state such a case. That question is not presented on the record before us and we make no intimation what the decision should be if the city, as an act of its sovereignty, should adopt some completed but unauthorized work of the kind which it deemed of real public benefit and as an exercise of its taxing prerogative should essay to lay a special impost with which to raise funds

to pay for it.   Under the present Portland charter it behooves the freeholder to be vigilant in respect to street improvements in his vicinity and resist them in their incipiency if he has cause for doing so.   He cannot safely wait until a pavement is installed and then for the first time begin to object; for that is one of the things the city can put in the street and make him pay for.   It may err in its effort to acquire authority over the adjacent property in the beginning but it seems to be a case of "never too late to mend," and the municipality may return again and again to the task until it reaches the desired result, always provided that somewhere in the process the freeholder has an opportunity to be heard before his property is taken for payment of the tax.   The petition for rehearing is overruled.

REVERSED.   REHEARING OVERRULED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.