Argued at Pendleton May 6, affirmed June 4, rehearing denied June 25, 1918.

## WAGONER v. CITY OF LA GRANDE.*

(173 Pac. 305.)

</div>

**Statutes—Sufficiency of Title—Amendment of City Charter.**

   1. The title, "An act to amend the charter of the city of La Grande in Union County, State of Oregon," was sufficient.

---

*On validity of contract for material patented or held in monopoly where a letting to the lowest bidder is required, see notes in 18 L. R. A. 45; 5 L. R. A. (N. S.) 680; 46 L. R. A. (N. S.) 990.

On the right of taxpayer, in absence of statute, to enjoin unlawful expenditures by municipality, see note in 36 L. R. A. (N. S.) 9.

<div align="right">

REPORTER.

</div>

**Municipal Corporations—Amendment of Charter—Ballot Title—Sufficiency.**

2. The ballot title of an act amending the charter of a city, "Shall the proposed amendment of the charter of the City of La Grande, Oregon, including the amendment of said charter providing for reassessment of street improvements already made, be adopted," was sufficient as expressly directing attention to the amendment of the charter authorizing reassessments.

[As to necessity that propositions submitted to the voters of a municipality be stated singly, see note in Ann. Cas. 1912D, 319.]

**Municipal Corporations — Street Improvements — Remonstrances — Amendment of Charter.**

3. The language on the subject of remonstrances by property owners in the provisions of the charter of 1915 of the City of La Grande, as to reassessments for street improvements, is referable only to the provision of the same charter that if the owners of 55 per cent of the property affected, measured by the front foot, object, the commission shall be ousted of jurisdiction for six months, and have no application to remonstrances filed before amendment of the charter in 1913, when it contained no provision whereby remonstrance was effectual to defeat an improvement.

**Municipal Corporations—Street Improvements—Reassessment—Fraud.**

4. The only fraud which will defeat a reassessment for a street improvement is fraud of the city council in the reassessment proceeding.

**Municipal Corporations — Street Improvement — Reassessment—Lack of Jurisdiction.**

5. The council's lack of jurisdiction in the original proceeding for a street improvement will not defeat a reassessment therefor.

**Municipal Corporations — Street Improvement — Void Contract—Reassessment.**

6. The fact that street improvement work was done under a void contract will not preclude a reassessment of the property, where the statute authorizes it.

**Municipal Corporations — Street Improvement — Price—Discretion of Council.**

7. If the price for a street improvement was not so grossly excessive as to imply fraud, the matter of price was within the discretion of the city counsel.

**Municipal Corporations—Street Improvement—Review of City Council—Supreme Court.**

8. In suit to enjoin the enforcement of municipal liens imposed to pay for a street improvement, the Supreme Court has not jurisdiction to review the legislative acts of the city council in determining the question of benefits, and whether the improvement is out of proportion to the value of the objectors' property.

Constitutional Law — Legislative Acts — Determination of Council
    Fixing Improvement District—Review.

9. The determination of the city council, fixing the district to
which the expense of a street improvement should be chargeable,
was a legislative act which the Supreme Court cannot review in suit
to enjoin the enforcement of municipal liens.

Municipal Corporations — Improvement — Objections — Showing of
    Record.

10. Where objections to a municipal street improvement involved
questions of fact, the record must affirmatively show a finding upon
them by the council.

Municipal Corporations — Street Improvement — Creation of Assess-
    ment District—Reassessment.

11. The failure of the council of a city to create an assessment
district for a street improvement prior to performance of the work
did not preclude reassessment under the city charter to charge the
property benefited with a portion of the cost commensurate with the
special benefits.

Evidence—Judicial Notice—Municipal Ordinance.

12. The Supreme Court cannot take judicial knowledge of the ex-
istence of a city ordinance requiring contracts for street improve-
ments to be let to the lowest bidder.

Municipal Corporations — Street Improvement — Single Contract for
    Paving, Curbing, etc.

13. It was within the discretion of the city council to let, in one
contract for a street improvement, the work of excavation, drainage
and curbing, all incidental to the paving.

Municipal Corporations—Street Improvement—Competitive Bidding—
    Patented Material—License to Use.

14. That the city recorder, on filing by the owner of the patent,
of license for the use of its patented gravel bitulithic pavement; put
the paper where it was not readily found, and indexed it in a way
which did not assist in the search for it, does not warrant ignoring
it in determining whether the principle of competitive bidding was
violated in the city's contract for such material improvement.

Municipal Corporations — Street Improvements — Reassessments —
    Retroactive Powers.

15. The voters of a city, in amending its charter to give the city
power to make reassessments for street improvements, could make
such powers retroactive.

Municipal Corporations — Reassessments — Charter Amendment—Con-
    struction.

16. Remedial legislation, as an amendment to a city's charter em-
powering it to make reassessments for street improvements, must be
construed so as to effectuate the purpose of the electors in adopting
it.

Municipal Corporations—Street Improvement—Waiver of Defect.

17. Property owners who applied to pay street improvement liens
on their property in ten annual installments, and, as required by

Section 3245, L. O. L., expressly waived in their applications irregularity or defect, jurisdictional or otherwise, in the proceedings to improve the street, were concluded by such waiver, though a reassessment for the improvement was unauthorized.

From Union: John W. Knowles, Judge.

In Banc.

This is a suit brought to enjoin the defendants from enforcing municipal liens imposed on the property of plaintiffs to pay 75 per cent of the cost of a street improvement. The case grows out of the same improvement as that involved in *Birnie* v. *La Grande,* 78 Or. 531, 537 (153 Pac. 415). It was there held that "to cure the invalidity in the proceedings it was necessary that they be had *de novo.*" After the decision in that case an attempt was made to amend the charter of the City of La Grande at an election held December 13, 1915. The amendment undertook to incorporate the following provisions in the charter:

"Whenever an assessment for the opening, altering, grading, paving or improving of any street or alley or the construction, reconstruction or repair of any sewer, water drain, ditch or conduit, or any kind of local improvement has been or may hereafter be made by the City of La Grande upon or against the property abutting upon, contiguous or adjacent or tributary to or benefited by such improvement and such assessment or any part thereof has been or shall hereafter be set aside, annulled, declared or held void or its enforcement refused or enjoined by any court of this state or any court of the United States having jurisdiction therein, whether directly or by virtue of any decision of such court or when the commission of the City of La Grande shall be in doubt as to the validity of such assessment or any part thereof, the commission of said city may, by ordinance, make a new assessment or reassessment upon the lots, blocks, or parcels of land which have been benefited or may be benefited by such improvement. Such assessment or reassessment shall be based upon the special bene-

fits of such improvement to the respective lots, blocks or parcels of land assessed or reassessed at the time of its original making, but shall not exceed the amount of such original assessment with interest thereon from date of the delinquency of the original assessment which may be added at the discretion of the commission.

"Such reassessment shall be made in an equitable manner as nearly as may be in accordance with the law in force at the time it is made, but the commission may adopt a different plan of apportionment of benefits, when in their judgment essential to secure an equitable reassessment.

"The proceedings required by this charter to be had prior to the making of the original assessment shall not be required to be taken or had within the intent of this section. Any such reassessment shall be made and shall become a charge upon the property upon which the same is levied, notwithstanding the omission, failure or neglect of any officer, body or person to comply with the provisions of this charter connected with or relating to such improvement and original assessment and notwithstanding the proceedings of the commission or any officer of the city or contractor or other person connected with such work or improvement may have been irregular or defective, whether such irregularity or defect be jurisdictional or otherwise. Such reassessment shall not be made in case of a street or alley improvement wherein a remonstrance, sufficient in law to defeat the original improvement, shall have been filed prior to the making of the improvement."

The amended charter further provided a procedure for the making of such reassessment. In March, 1916, the council proceeded to reassess the property benefited by the improvement.

Plaintiffs claim that the reassessment proceedings were ineffectual and that the enforcement of the liens alleged to arise out of the reassessment should be en-

joined.   The Circuit Court dismissed the complaint and the plaintiffs appeal.                          AFFIRMED.

For appellants there was a brief over the names of *Mr. Turner Oliver* and *Messrs. Cochran & Eberhard,* with oral arguments by *Mr. Oliver* and *Mr. George T. Cochran.*

For respondent, Warren Construction Company, there was a brief filed over the name of *Mr. John P. Rusk,* with an oral argument by *Mr. Rusk.*

For respondents, City of La Grande and its officers, there was a brief over the name of *Mr. John D. Slater,* City Attorney, with an oral argument by *Mr. Slater.*

McCAMANT, J.—1, 2. A preliminary question is discussed in the briefs as to the validity of the amendment of the charter attempted in December, 1915. The proceedings in connection with the amendment have not been received in evidence. The amended complaint, after referring to the amendment of the charter made in 1913, alleges:

"That thereafter on December 13th, 1915, upon initiative petition, there was attempted to be enacted and passed by a majority vote of the legal voters of the said City of La Grande, at an election duly and regularly held in said city for said purpose a 'Proposed Amended Charter of the City of La Grande, Union County, State of Oregon,' the title of said act being 'An Act to Amend the Charter of the City of La Grande, in Union County, Oregon,' with the words added thereto as follows: 'Shall the proposed amendment of the charter of the City of La Grande, Oregon, including the amendment of said charter providing for reassessment for street improvements already made be adopted?' a true and correct copy of said so-called amended charter is hereto attached marked Ex-

hibit 'C' and is made a part of this amended complaint.''

Elsewhere the pleader speaks of the charter of 1915 as the "amended city charter." The only allegation in the amended complaint which specifically attacks the procedure by which the amendment was made is the following:

"That said pretended amendment above set out and contained in the said pretended Charter of 1915, is not germane to the ballot title of said pretended Amended Charter, and said ballot title was and is misleading, and that the whole of said pretended amendment was and is void.''

On the trial of the cause counsel for plaintiffs made the following admission:

"The document marked C is called the Proposed Amended Charter of the City of La Grande, of December 13, 1915, is the document under which the present commission of La Grande is acting, is the present city charter. We do not admit they are regularly passed, but we admit they are what they purport to be to that extent.''

In this condition of the record plaintiffs are entitled at most to a determination of the sufficiency of the title of the act and of the ballot title under which the amended charter was submitted to the voters of La Grande. They admit that the 1915 charter is that under which the city is now operating. If they claim it is invalid for any reason they should point out the ground of the invalidity. The ballot title was as follows:

"Shall the proposed amendment of the charter of the City of La Grande, Oregon, including the amendment of said charter providing for reassessment for street improvements already made be adopted?''

The title of the act is as follows:

"An Act to Amend the Charter of the City of La Grande, in Union County, State of Oregon."

It is held that the provisions of state Constitutions on the subject of titles and styles of acts have no application to municipal ordinances: *Colby* v. *Medford*, 85 Or. 485, 508 (167 Pac. 487); *Ex parte Haskell*, 112 Cal. 412 (44 Pac. 725, 727, 32 L. R. A. 527); *City of Tarkio* v. *Cook*, 120 Mo. 1 (25 S. W. 202, 41 Am. St. Rep. 678); 28 Cyc. 378. The first of the above cases expressly holds that the provisions of the Oregon Constitution on this subject have no application to measures for the amendment of city charters. We think that the title of the act is sufficient.

The ballot title expressly directed attention to the amendment to the charter authorizing these assessments. It was sufficient within the rule announced in *State* v. *Langworthy*, 55 Or. 303, 312 (104 Pac. 424; 106 Pac. 336). The amended complaint admits that the election at which the charter was adopted was duly and regularly held. It follows from this admission that every voter received a copy of the proposed amendment with the official arguments, if any, for and against its adoption: Sections 3478, 3480. We must assume that the electors voted intelligently and there is nothing in the record to impeach the validity of their action.

The amendment on the subject of reassessments is substantially identical with Section 400 of the Portland Charter which has been construed in *Kadderly* v. *Portland*, 44 Or. 118, 159, 160 (74 Pac. 710, 75 Pac. 222); *Duniway* v. *Portland*, 47 Or. 103, 108–112 (81 Pac. 945); *Hughes* v. *Portland*, 53 Or. 370, 383–393 (100 Pac. 942); *Terwilliger Land Co.* v. *Portland*, 62 Or. 101, 111 (123 Pac. 57); *Wilson* v. *Portland*, 87 Or. 507 (169 Pac. 90, 92, 171 Pac. 201). It is also substan-

tially identical with Section 132a of the Medford Charter which was construed in *Phipps* v. *Medford,* 81 Or. 119 (156 Pac. 787, 158 Pac. 666). These decisions cover the whole subject of reassessment and leave little for us to do in this case except to apply the principles announced to the facts disclosed by this record.

3. The amended charter provides:

"Such reassessment shall not be made in case of a street or alley improvement wherein a remonstrance, sufficient in law to defeat the original improvement, shall have been filed prior to the making of the improvement."

Two remonstrances were filed by property owners prior to the making of the improvement, but the charter of 1909 which was then in force contained no provision whereby a remonstrance was effectual to defeat an improvement. We think that the language above quoted is for this reason without application to these remonstrances. It is provided in subdivision 5 of Section 10 of the Charter of 1915,

"that if the owners of fifty-five per cent of the property to be affected by said improvement, measured by the front foot, object to such improvement, the Commission shall be ousted of jurisdiction for a period of six months thereafter."

The language in the reassessment provisions of the Charter of 1915 on the subject of a remonstrance is referable only to this provision of the same charter.

4. It is claimed that the original proceeding was fraudulent and that for this reason a reassessment could not be made. The evidence fails to sustain plaintiff's allegations of fraud. Furthermore, it is held in *Duniway* v. *Portland,* 47 Or. 103, 112 (81 Pac. 945), that the fraud which will defeat a reassessment is fraud of the council in the reassessment proceeding. There is no evidence of such fraud in this case.

5, 6. Plaintiffs contend that the original contract under which the work was done was void for a number of reasons and that this fact precludes a reassessment. It was held in *Birnie* v. *La Grande,* 78 Or. 531 (153 Pac. 415), that the council never acquired jurisdiction to proceed with the improvement and it follows from this circumstance that the contract was void. A lack of jurisdiction in the original proceeding will not defeat the reassessment: *Nottage* v. *Portland,* 35 Or. 539 (58 Pac. 883, 76 Am. St. Rep. 513); *Phipps* v. *Medford,* 81 Or. 119 (156 Pac. 787, 158 Pac. 666); *Wilson* v. *Portland,* 87 Or. 507 (169 Pac. 90, 171 Pac. 201). The fact that the work was done under a void contract will not preclude a reassessment of the property where the statute authorizes such reassessment: 2 Page and Jones on Taxation by Assessment, 961; *Cawker* v. *Milwaukee,* 133 Wis. 35 (113 N. W. 417); *Tuttle* v. *Polk,* 84 Iowa, 12 (50 N. W. 38, 39, 40); *St. Paul* v. *Mullen,* 27 Minn. 78 (6 N. W. 424); *State* v. *District Court,* 102 Minn. 482 (113 N. W. 697, 700 114 N. W. 654).

It is argued that the work done does not conform to the plans and specifications, but the preponderance of the testimony is with defendants on this issue.

7. It is contended that the price to be paid for the work was excessive. As to this contention it is enough to say that the price is not so grossly excessive as to imply fraud and in the absence of such a situation the price was within the discretion of the council.

8. Plaintiffs contend that the improvement did not benefit their property and that therefore the council had no right to reassess for the collection of its cost. Plaintiffs produce cogent testimony to the effect that the improvement is out of proportion to the value of their property. If we had jurisdiction to review the

legislative acts of the council, this record would appeal to us persuasively, but we have no such jurisdiction. It was for the council to determine what streets in La Grande should be smooth-surfaced. Before making the final reassessment the defendants fixed a time for hearing objections thereto and published a notice for three weeks, as required by the 1915 charter. This notice directed the attention of property owners interested to the preliminary assessments on file in the office of the city recorder and notified them of the time set for the hearing of objections.

Written objections were filed and at the time stated in the notice and at an adjourned meeting of the council held for such purpose plaintiffs appeared by counsel and furnished testimony in support of their objections. The council duly heard the testimony and argument of plaintiffs and thereupon determined that the property in the district fixed by a previous ordinance was specially benefited by the improvement to the extent of 75 per cent of the amounts severally assessed at the time the improvement was made.

9. In 1 Page and Jones on Taxation by Assessment, 533, it is said:

"The question of benefit to the property owner is not a judicial question unless the court can plainly see that no benefit can exist and, this absence of benefit is so clear as to admit of no dispute or controversy by evidence."

Plaintiffs' testimony does not meet these requirements. That we cannot review the action of the council in the matter of benefits so determined is taught by *Hughes* v. *Portland*, 53 Or. 370, 394 (100 Pac. 942), and *Phipps* v. *Medford*, 81 Or. 119, 131, 132 (156 Pac. 787, 158 Pac. 666). The objections of these plaintiffs do not go to the matter of the apportionment of the

cost of the improvement among the owners of abutting property. Plaintiffs contend that the council erred in fixing the district to which the expense should be chargeable. This determination is a legislative act which the court cannot review: *Bauman* v. *Ross,* 167 U. S. 548, 589, 590 (42 L. Ed. 270, 17 Sup. Ct. Rep. 966); *Ellwood* v. *Rochester,* 122 N. Y. 229 (25 N. E. 238); *Chicago Co.* v. *Centerville,* 172 Iowa, 444 (153 N. W. 106, 107, 154 N. W. 596); *Rolph* v. *Fargo,* 7 N. D. 640 (76 N. W. 242, 251, 42 L. R. A. 646); *King* v. *Portland,* 38 Or. 402, 414 (63 Pac. 2, 55 L. R. A. 812); Cooley on Taxation (2 ed.), 149.

10. It is the rule in this jurisdiction that where objections to a municipal improvement involve questions of fact, the record must affirmatively show a finding upon them by the council: *Applegate* v. *Portland,* 53 Or. 552, 555, 556 (99 Pac. 890). It is intimated in *Hughes* v. *Portland,* 53 Or. 370, 388 (100 Pac. 942), that is should appear either in the original proceeding or in that brought for reassessment purposes that the objections raised by property owners in so far as they involve questions of fact have been heard and determined by the council.

The record shows that two protests were filed prior to the making of the improvement and a third one was directed against the reassessment. The first of these was filed by Turner Oliver, October 16, 1912. It urged that the price to be charged for the work was excessive and that the contract was to be let without competition. The second protest, signed by sundry property owners, was filed April 2, 1913. It alleged that the price named in the contract with Warren Construction Company was excessive and that the specifications were not sufficiently precise. The third protest, filed April 5, 1916, made the following contentions:

1. Want of jurisdiction to reassess because of adjudications that the proceedings taken were ineffectual;

2. Failure of the council to create an assessment district prior to the making of the improvement, in the manner prescribed by the charter or at all;

3. Want of jurisdiction to make the improvement originally;

4. Want of jurisdiction to contract with Warren Construction Company;

5. Lack of authority to reassess under the charter as amended in 1913;

6. Lack of power in the voters of La Grande so to amend the charter in 1915 as to authorize this reassessment, also inadequacy of the amendment to justify the action taken by the council;

7. Lack of power in the council to levy a reassessment in excess of the special benefits;

8. That the improvement as made did not comply with the plans and specifications;

9. That the Warren Construction Company had waived interest on the warrants issued to it and that the property owners should therefore be charged no interest.

11. These protests for the most part raised questions of law. The only questions of fact presented by them are that the price charged for the work was excessive, that the work was not done in accordance with the plans and specifications, that interest had been waived on the warrants and was therefore not chargeable on the reassessment, and that the council had failed to create an assessment district prior to the performance of the work. The first and the last of these objections were insufficient in law and therefore required no notice from the council. In the absence of fraud the price to be paid for the improvement was a matter within the discretion of the council. The failure of the council to create an assessment district

prior to the performance of the work did not preclude a reassessment for the purpose of charging the property benefited with a portion of the cost commensurate with the special benefits: *Thayer Lumber Co.* v. *Muskegon,* 157 Mich. 424 (122 N. W. 189); *Wiese* v. *South Omaha,* 100 Neb. 492 (160 N. W. 890).

The other questions of fact were passed on by the council either directly or inferentially as will appear from the following recitals in the Resolution of Reassessment:

"The commission now finds that the said improvement of Fourth Street, as set out in said Resolution of March 1, 1916, was constructed substantially in accordance with the plans, specifications and contract therefor; that the total cost of such improvement was the sum of $41,317.46; that the property in said reassessment district Number 54 mentioned and described and reassessed in the said preliminary reassessment was specially benefited by the improvement of the said Fourth Street as set out in said Resolution of March 1, 1916, to the extent of 75 per cent of the several amounts assessed to each separate lot, parcel or tract of real estate in and by said reassessment without interest thereon."

It will be noted that the property owners were relieved of the interest burden and also of 25 per cent of the amount of the original liens.

12. It is held in *Terwilliger Land Co.* v. *Portland,* 62 Or. 101, 110, 111 (123 Pac. 57), that where a contract for a municipal improvement is let without competition in violation of a charter requirement which provides that it be let to the lowest bidder, the improvement is so charged with illegality that it cannot form the basis of a reassessment. Plaintiffs claim that this principle is fatal to the reassessment in the case at bar. In the Terwilliger Land Company case and the other Oregon cases which have followed it, the decisions are based

on charter requirements that the contracts be let to the lowest bidder. We find no such provision in the La Grande charter of 1909, under which this work was done. On the contrary, by Section 37 of this charter the council is granted plenary power "to grade, pave, * * curb or otherwise improve the * * streets * * of the City." It is argued in one of plaintiffs' briefs that there was a municipal ordinance which required the letting of contracts to the lowest bidder, but no such ordinance was offered in evidence nor was it pleaded in the manner required by Sections 90 and 3244, L. O. L. We cannot take judicial knowledge of the existence of such an ordinance: *Pomeroy* v. *Lappeus,* 9 Or. 363, 364; *Dailey* v. *Cremen,* 80 Or. 183, 188 (156 Pac. 797).

13, 14. Assuming without deciding that it was the duty of the municipal authorities to let contracts for street improvements through competitive bidding, it does not appear that this principle was violated in the contract made with the Warren Construction Company. It is established that on May 10, 1912, Warren Brothers Company filed with the city recorder a license for the use of its patented Gravel Bitulithic Pavement almost identical with that upheld by this court in *Johns* v. *Pendleton,* 66 Or. 182 (133 Pac. 817, 134 Pac. 312, Ann. Cas. 1915B, 454, 46 L. R. A. (N. S.) 990). The price exacted under the license is identical with that approved in the foregoing case. The doctrine of *Johns* v. *Pendleton* has been approved in *Sherrett* v. *Portland,* 75 Or. 449, 463 (147 Pac. 382), and *Temple* v. *Portland,* 77 Or. 559, 563 (151 Pac. 724). This latter case is invoked by plaintiffs as an authority to support their contention that the contract was let in this case without real competition. The cases are alike only in the fact that in each case a patented

pavement was specified. In the Temple case the owner of the patent had filed no license authorizing bidders to use the patented material; moreover, the work included the laying of sidewalks and bids were called for in such a way as to preclude the construction of the sidewalks by anyone other than the owner or licensee of the patent. The illegality of the contract in the Temple case was predicated in part on the fact that "a considerable and substantial portion of the improvement could have been segregated from the Hassam pavement" and that this was not done. The contract under which the work in the instant case was done called for no sidewalks. The excavation, drainage and curbing provided for in the contract were all incidental to the paving. It was clearly within the discretion of the council to let the work in one contract.

Some question is made as to the filing of the license by Warren Brothers Company, but plaintiffs have established nothing in this branch of their case except that the city recorder put the paper where it was not readily found and that he indexed it in a way which did not greatly assist in the search. These are insufficient reasons for ignoring it.

Plaintiffs rely largely on *McMillan* v. *Barber Asphalt Co.,* 151 Wis. 48 (138 N. W. 94, Ann. Cas. 1914B, 53). The contract in that case was tainted with fraud in that it was secured by the bribery of a councilman. Pending proceedings to enjoin its performance the city completed the work and the contract was subsequently held fraudulent and illegal by the court of last resort. The case holds that a work done under an unlawful contract cannot be made the basis of a reassessment proceeding. It is difficult to reconcile this case with the opinion of Mr. Chief Justice WOLVERTON in *Duniway* v. *Portland,* 47 Or. 103, 112

(81 Pac. 945); in any event the case at bar is wholly unlike the Wisconsin case in its facts. The contract under which the work was done in the instant case was void for the reasons pointed out in *Birnie* v. *La Grande,* 78 Or. 531 (153 Pac. 415), but it was neither fraudulent nor illegal.

15, 16. We must assume that the people of La Grande acted intelligently when they amended their charter in 1915; that they intended to vest the city with the powers possessed by Portland and by Medford, powers well defined by the decisions of this court. It was competent to make these powers retroactive and the amendment adopted had that effect: *Nottage* v. *Portland,* 35 Or. 539, 552 (58 Pac. 883, 76 Am. St. Rep. 513); *Kadderly* v. *Portland,* 44 Or. 118, 159, 160 (74 Pac. 710, 75 Pac. 222). The far-reaching effect of the amendment of the charter on the subject of reassessment is clearly pointed out by Mr. Justice BURNETT in *Phipps* v. *Medford,* 81 Or. 119, 130 (156 Pac. 787, 158 Pac. 666). The legislation is remedial and is to be construed in such manner as to effectuate the purpose of the electors in adopting it: *Nottage* v. *Portland,* 35 Or. 539, 548 (58 Pac. 883, 76 Am. St. Rep. 513). The city authorities in making the reassessment conformed strictly to the procedure prescribed by their amended charter and the lower court did not err in adjudging the validity of the liens created by the reassessment.

17. The plaintiffs Hansen, Horstman and Eastman made application to pay the liens levied on their property in ten annual installments. As required by Section 3245, L. O. L., their applications contained the following waiver:

"I hereby expressly waive all or any irregularity or defect, jurisdictional or otherwise, in the proceedings to improve said street."

This waiver is alleged in the answer and established by the proof.   These three plaintiffs are concluded by this circumstance, even if their contentions were otherwise meritorious: *Parker* v. *Hood River,* 81 Or. 707, 709, 710 (160 Pac. 1158).

The decree is affirmed.

<div align="center">Affirmed.   Rehearing Denied.</div>